## In re ENVIRONMENTAL RESEARCH & DEVELOPMENT, INC., Debtor.

**Dorothy EISENBERG, Trustee of the Bankruptcy Estate of Environmental Research & Development, Inc., Plaintiff,**

v.

**RESOURCE DYNAMICS, INC.; Richard Lehrer; Eugene Boshes; Stanley Morris; Robert Engle; Barry Hirsch; Mitchell Brater; Howard Linker; Frances Heller; Seymour Katz; Robert Goldman; Myron Vogel; Charles C. Johnston; Harris Shapiro; Herman Finesod; Marvin E. Basson; Premium Capital Investors Corp.; U.S.D. Representatives & Investment Co., S.A.; Tracar, S.A.; Booth, Lipton & Lipton; Kanter, Haber & Vogel; and John Does, Defendants.**

**Bankruptcy No. 83 B 10534 (BRL).**
**Adv. No. 83–6166A.**

United States District Court,
S.D. New York.

Feb. 25, 1985.

Wilson, Elser, Edelman & Dicker, New York City, for defendants Kanter, Haber &

Vogel, and Myron Vogel; Thomas A. Leghorn, New York City, of counsel.

Booth, Lipton & Lipton, New York City, for defendant Booth, Lipton & Lipton; Philip H. Kalban, New York City, of counsel.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for plaintiffs; John E. Westerman, Garden City, N.Y., of counsel.

SOFAER, District Judge:

On April 12, 1983, Environmental Research & Development, Inc. ("ERD"), filed a voluntary petition for reorganization pursuant to Chapter 11 in the Bankruptcy Court for the Southern District of New York. On June 8, 1983, the case was converted to a Chapter 7 liquidation proceeding by an order of the Bankruptcy Court. Amended Complaint ¶¶ 2, 3 (Affidavit of Thomas W. Hyland, July 3, 1984, Exh. A). Dorothy Eisenberg was appointed trustee of ERD's estate.

Eisenberg brought this suit to recover the value of ERD's computer assets. ERD had transferred them to Resource Dynamics, Inc. ("RDI"), a spin-off corporation, roughly a year before the filing of ERD's Chapter 11 petition, through a private placement memorandum dated January 18, 1982. The trustee alleges that this maneuver violated the fraudulent transfer provision of the federal bankruptcy law, 11 U.S.C. § 548 (1982), and the fraudulent conveyance provisions of New York law, N.Y. Debt. & Cred.L. §§ 273, 274–76 (McKinney 1945 & Supp.1983–84). The first two counts of the amended complaint seek a judgment voiding the transfer, declaring the assets or a sum equivalent to their value at the time of transfer to be assets of ERD's estate, and directing the defendant shareholders of RDI to turn over the assets or an equivalent sum to the trustee. The third, fourth, fifth, and sixth counts claim malpractice by two law firms allegedly involved in the transfer of assets from ERD to RDI—Booth, Lipton & Lipton, and Kanter, Haber & Vogel—and by an individual at the latter firm, Myron Vogel. These

malpractice claims seek damages equal to the loss allegedly suffered as a result of the transfer of assets. Thus, the relief sought under the four malpractice counts of the complaint is the equivalent of the relief sought under the two fraudulent transfer counts.

On July 5, 1984, attorneys for defendants Myron Vogel and Kanter, Haber & Vogel ("the Vogel defendants") brought an Order To Show Cause in the United States District Court for the Southern District of New York, seeking an order withdrawing the trustee's malpractice action from the Bankruptcy Court and dismissing the action either for lack of subject matter jurisdiction or for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(1), (b)(6). Booth, Lipton & Lipton later joined in this motion. After oral argument, the court granted defendants' motion to withdraw reference of the malpractice action. *See* Transcript of Oral Argument, July 17, 1984, at 12. It reserved decision on the questions whether the court lacked subject matter jurisdiction over plaintiff's claim and whether the complaint failed to allege a claim upon which relief could be granted.

For the reasons stated below, this court does possess subject matter jurisdiction. But because plaintiff's malpractice claims are dependent on the outcome of the bankruptcy court's resolution of the claim that the ERD–RDI transaction involved a fraudulent transfer, it is premature for this court to address the merits of the malpractice allegations against the Vogel defendants.

## I. *Subject Matter Jurisdiction*

The issue of subject matter jurisdiction in this case is complicated by the extraordinary fallout surrounding the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In 1978, Congress had passed a new Bankruptcy Act, Pub.L. 95–598, 92 Stat. 2549 ("1978 Act"). As part of that Act, Congress enacted a jurisdictional provision stating that "the district courts shall

have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." 1978 Act § 241(a), 92 Stat. at 2668 (codified as 28 U.S.C. § 1471(b) (1982)) ("section 1471"). The very next subsection of section 1471, however, provided that "[t]he bankruptcy court ... shall exercise all of the jurisdiction conferred by this section on the district courts." *Id.* (codified as 28 U.S.C. § 1471(c) (1982)). *Marathon* addressed the question whether the new bankruptcy court, whose judges did not possess Article III status, could adjudicate claims based on state-created rights. The Court answered this question in the negative, and held unconstitutional "the Act's conferral of broad adjudicative powers upon judges unprotected by Art. III." 458 U.S. at 62, 102 S.Ct. at 2867 (Brennan, J.). By itself, this holding did not necessarily affect the district court's exercise of the powers conferred under section 1471. But the penultimate footnote of Justice Brennan's plurality opinion cast the entire jurisdictional structure into doubt: "Nor can we assume, as the Chief Justice suggests, *post,* at 92 [102 S.Ct. at 2882], that Congress' choice would be to have this case 'routed to the United States district court of which the bankruptcy case is an adjunct.' We think it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III in the way that will best effectuate the legislative purpose." *Id.* at 87 n. 40, 102 S.Ct. at 2880 n. 40.

The Supreme Court stayed its judgment in *Marathon* to enable Congress to "reconstitute" the bankruptcy courts. *Id.* at 88, 102 S.Ct. at 2880. The stay expired, however, before Congress managed to enact a new bankruptcy bill. The Southern District of New York therefore adopted a rule of reference recommended by the Judicial Conference. *See* District Court Emergency Bankruptcy Rule I, and Southern District Supplemental. Rule I(c)(1) provided that "[a]ll cases under Title 11 and all civil proceedings arising under Title 11 or

arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district." Rule I(d)(1)(D) provided that bankruptcy judges could not conduct jury trials and that such trials should therefore be transferred to a district judge; Rule I(d)(3)(A), when read in conjunction with Rule I(d)(2), empowered bankruptcy judges to enter orders and judgments in proceedings to set aside preferences and fraudulent conveyances.

On July 10, 1984, Congress finally enacted a new jurisdictional framework for bankruptcy cases. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 ("1984 Act"). Section 101(a) of the 1984 Act amended 28 U.S.C. § 1334 ("section 1334"). Section 1334(b) is now identical to section 1471(b) under the 1978 Act; section 1334(b) therefore grants the district courts original, but not exclusive, jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11." 98 Stat. at 333. New section 1334 also contains provisions governing mandatory and discretionary abstention. Section 122(b) of the 1984 Act explicitly states that the abstention provisions "shall not apply with respect to cases under title 11 of the United States Code that are pending on the date of enactment of this Act, or to proceedings arising in or related to such cases." 98 Stat. at 346.

In addition, section 104(a) of the 1984 Act added new jurisdictional provisions regarding bankruptcy judges to title 28. New 28 U.S.C. § 157(b)(1) provides that "[b]ankruptcy judges may hear and determine ... all core proceedings arising under title 11, or arising in a case under title 11...." 98 Stat. at 340. Among the matters which section 157 defines as "core proceedings" are "proceedings to determine, avoid, or recover fraudulent transfers." *Id.* (to be codified as 28 U.S.C. § 157(b)(2)(H)).

This case is not governed by the new Act, since its mandatory abstention and jury trial provisions do not apply to cases already pending. *See* 1984 Act § 122(b), 98 Stat. at 346. The new Act does provide guidance, however, in interpreting the scope of this court's power under section 1471 and Emergency Rule I. Congress' decision to have section 1334 track section 1471 supports the Chief Justice's assumption in *Marathon* that, to the extent that ancillary state-law proceedings cannot be delegated to non-Article III judges, Congress meant to grant broad jurisdiction over such claims to the district courts. *See* 458 U.S. at 92, 102 S.Ct. at 2882 (Burger, C.J., dissenting); *cf. id.* at 87 n. 40, 102 S.Ct. at 2880 n. 40 (Brennan, J.) (refusing to make such an assumption). The Second Circuit made a similar assumption in *In re Kaiser,* 722 F.2d 1574, 1578 (2d Cir.1983), which upheld Emergency Rule I and the bankruptcy jurisdiction of the district courts: "Thus, section 1471(a) and (b) still explicitly vests jurisdiction in the district courts in 'all cases under title 11' and 'all civil proceedings arising under title 11 or arising in or related to cases under title 11.'"

Moreover, the 1984 Act's explicit statement that the mandatory abstention provisions of section 1334(c)(2) do not apply to cases already pending, *see* 1984 Act § 122(b), 98 Stat. at 346, suggests that Congress contemplated the exercise of pendent jurisdiction by the district courts. And the numerous statements in the legislative history of the 1984 Act concerning the Senate version of section 1334—which, unlike the House version that ultimately was passed, would have "prohibited the bankruptcy courts or district courts from considering *any* case that was based upon a State law claim," Statement of Sen. Robert Dole, June 29, 1984, *reprinted in* 1984 U.S.Code Cong. & Ad.News 586, 587 (emphasis added)—also suggest that the district courts enjoy a broad power of ancillary, or pendent, jurisdiction. *See, e.g.,* Statement by Sen. Orrin Hatch, June 29, 1984, *reprinted in* 1984 U.S.Code Cong. & Ad.News 590, 591.

The question therefore becomes whether a proceeding of the type initiated by ERD's trustee falls within the "arising in or related to" jurisdiction possessed by this court.

Congress conceived of such jurisdiction in broad terms. *See, e.g., In re White Motor Corp.*, 42 B.R. 693, 697 (N.D.Ohio 1984) (legislative history of 1984 Act shows desire to retain as broad a jurisdiction as is consistent with *Marathon* ); H.R.Rep. No. 595, 95th Cong.2d Sess. 47–48, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6009 (jurisdiction of federal courts under bankruptcy clause should cover "all litigation having a significant connection with bankruptcy" even if state law is involved).

The Vogel defendants argue that this court has no jurisdiction over the trustee's malpractice claim because it involves state-law determinations and there is no diversity. *See* Vogel Defendants' Memorandum at 11–12. Their argument mistakes the essential nature of bankruptcy jurisdiction. The only basis for the trustee's bringing this action in federal court rests on its connection with ERD's bankruptcy proceedings. But defendants rely on the general jurisdictional provision of 28 U.S.C. §§ 1331 and 1332, not on the specialized provisions that apply to bankruptcy cases, 28 U.S.C. §§ 1334 and 1471. Despite the state-law nature of the malpractice issues, the appropriate analytic framework for deciding this question depends on an understanding of the peculiar interplay of federal-question jurisdiction and pendent jurisdiction in the field of bankruptcy law. *Cf. In re WWG Industries*, 44 B.R. 287, 290 (N.D.Ga.1984) (rejecting diversity analysis in favor of ancillary jurisdiction analysis).

■■■ Issues of bankruptcy are federal questions. *See* U.S. Const. Art. I, § 8 cl. 4 (granting to Congress the power to "establish ... uniform Laws on the subject of Bankruptcies throughout the United States"). Thus, "federal court adjudication of disputes arising pursuant to bankruptcy ... is conventional federal-question jurisdiction." *National Mutual Insurance Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 611, 69 S.Ct. 1173, 1187, 93 L.Ed. 1556 (1949) (Rutledge, J., concurring). Moreover, because one of the central purposes of the federal bankruptcy laws is to mar-

shall the estate of the debtor, proceedings which seek to augment or recover assets of the bankrupt's estate should usually be viewed as arising under the laws of the United States. *See id.* at 652 n. 3, 69 S.Ct. at (Frankfurter, J., dissenting) ("That a particular claim dissociated from the fact of bankruptcy would have to be brought in a State court for want of any ground of federal jurisdiction is irrelevant.... The congeries of controversies ... brought into being by reason of bankruptcy may be lodged in the federal courts because they arise under 'the Laws of the United States,' to wit, laws concerning the 'subject of bankruptcies.' ").

An alternative view of such proceedings would categorize them not as themselves involving a federal question but rather as being sufficiently related to a central concern of the bankruptcy laws to justify their adjudication by federal courts employing the power of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), provides the classic formulation of pendent jurisdiction:

Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ...," U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103 [53 S.Ct. 549, 77 L.Ed. 1062]. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there

is *power* in federal courts to hear the whole.

*Id.* at 725, 86 S.Ct. at 1138 (ellipses, emphases, and interpolation in original; footnotes omitted). The "arising in or related to" federal jurisdiction over bankruptcy matters is a species of this general concept. In his dissent in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), Justice Frankfurter elaborated upon this idea:

> [B]ankruptcy decisions may be justified by the scope of the bankruptcy power, which may be deemed to sweep within its scope interests analytically outside the "federal question" category, but sufficiently related to the main purpose of bankruptcy to call for comprehensive treatment.... [A] particular suit by the trustee, under state law, to recover a specific piece of property might be analogized to the ancillary or pendent jurisdiction cases in which, in the disposition of a cause of action, federal courts may pass on state grounds for recovery that are joined to federal grounds.

*Id.* at 483, 77 S.Ct. at 935 (Frankfurter, J., dissenting); *see In re Bobroff*, 43 B.R. 746, 751 n. 10 (E.D.Pa.1984) (relying on *Lincoln Mills*). Justice Brennan adopted a similar, if less explicit perspective in *Marathon*, 458 U.S. at 72 n. 26, 102 S.Ct. at 2872 n. 26 (Northern's suit against Marathon could be heard in federal court "on the basis of its relationship to the petition for reorganization"); *see also In re WWG Industries*, 44 B.R. at 290 (concept of pendent jurisdiction is "only means" by which Congress could grant federal courts jurisdiction over separate state-law actions involving bankrupt's estate).

"The close relation between the federal and state claims [in *Marathon*] made it unnecessary for the ... Court to delineate the outer bounds of 'related case' jurisdiction." *In re Bobroff*, 43 B.R. at 750. The leading commentary on bankruptcy states that, although no conceptual limits exist to the reach of "arising in or related to" jurisdiction, situations may arise "in which the controversy is so tangential to the title 11 case that ... the bankruptcy court may decide that the exiguous nature of the relationship between the proceeding and the bankruptcy case is such as to fall without the court's jurisdiction. The criterion to be adopted in such a situation will undoubtedly be related to a determination of whether the outcome of the proceeding could conceivably have any effect upon the estate being administered." 1 L. King, Collier on Bankruptcy ¶ 3.01[1][e], at 3–49 (15th ed. 1983) (quoted with approval in *In re Turner*, 724 F.2d 338, 341 (2d Cir.1983) (Friendly, J.)).

■ The Vogel defendants' memorandum bases its assertion that this malpractice action is a "related proceeding" on the basis of precisely the "overly literal" definition of Emergency Rule I(d)(3)(A) expressly rejected by the Second Circuit in *In re Turner*, 724 F.2d at 340. They are nevertheless correct, however, in viewing the malpractice claim as related to the bankruptcy proceeding. The trustee's malpractice complaint is based the alleged participation of the defendant attorneys in a transaction which the trustee claims involved a fraudulent transfer. As both the trustee and defendants recognize, the malpractice claim is inextricably intertwined with the determination of whether the ERD–RDI deal was a fraudulent transfer. *See* Vogel Defendant's Memorandum at 16. Determination of the legitimacy of the ERD–RDI transfer is unquestionably the province of the bankruptcy court. *See* Emergency Rule I(d)(2) and (I)(d)(3)(A) (giving bankruptcy judges broad power in conducting proceedings to set aside fraudulent transfers); *cf.* 1984 Act § 104(a), 98 Stat. at 340 (to be codified at 28 U.S.C. § 157(b)(2)(H)) (proceedings to set aside fraudulent transfers are "core proceedings"). In addition, the relief sought in the malpractice counts is the restoration of ERD's estate to the position it would have occupied had the ERD–RDI transfer never taken place. Therefore, whatever the outer bounds of "related case" jurisdiction, this case falls well within them. *Compare Marathon*, 458 U.S. at 72 n. 26, 84 n. 36,

102 S.Ct. at 2872 n. 26, 2878 n. 36 (Brennan, J.) (Northern's claim for alleged breach of contract and warranty falls within definition of "related case") *with In re Turner,* 724 F.2d at 341 (suit brought by bankrupt in her own name, rather than in name of estate, which did not seek that damages be turned over to trustee not sufficiently related to bankruptcy case).

Again, although the 1984 Act is not controlling on this issue, its legislative history casts some helpful light on this case. For example, in discussing what he perceived to be constitutional difficulties created by the broad jurisdictional grant of the 1984 Act, Senator Hatch specifically stated that "[a]ncillary jurisdiciton [*sic*] questions are unrelated to this issue. Federal courts certainly retain authority to adjudicate a State claim arising out of the same facts giving rise to the Federal claim." Statement of Sen. Orrin Hatch, June 29, 1984, *reprinted in* 1984 U.S.Code Cong. & Ad.News 590, 595. The fact that even opponents of broad bankruptcy jurisdiction by the district courts recognize the legitimacy of pendent jurisdiction in the context of bankruptcy proceedings lends support to the propriety of exercising such jurisdiction in this case, where there is a relatively clear "Federal nexus." *Id.*

## II. *The Merits of the Trustee's Claim*

The way in which the malpractice claim is related to the underlying bankruptcy proceeding makes it premature for this court to address the merits of the trustee's allegations. The malpractice claim is dependent on a finding by the bankruptcy court that the ERD–RDI transaction involved a fraudulent transfer. The very principles of pendent jurisdiction which make a claim of malpractice under these circumstances amenable to federal jurisdiction are rooted in principles of judicial economy. *See United Mine Workers,* 383 U.S. at 726, 86 S.Ct. at 1139; *In re Turner,* 724 F.2d at 341. Unless and until the bankruptcy court finds the transfer to have been fraudulent, no need exists to decide whether plaintiff has alleged facts legally sufficient to support a malpractice claim and, if she has, to decide whether this court ought to abstain for reasons of comity from adjudicating that claim. Moreover, as the Vogel defendants rightly point out, even if malpractice occurred, no injury would be inflicted upon the estate if the trustee is able to avoid the transfer and recover the assets from the shareholders of RDI. *See* Vogel Defendants' Memorandum at 17. The action against the attorneys allegedly involved in the ERD–RDI deal can reasonably be viewed as a fallback claim to the most straightforward way of repairing the injuries suffered by ERD's estate.

This court will therefore deny defendants' motion to dismiss and will retain jurisdiction over the malpractice claim. The case should be docketed by the Clerk, and assigned a regular number. Rather than keep this case on the suspense docket pending the bankruptcy court's determination of the underlying transfer issue, the case will be closed, for statistical purposes, without prejudice to its being reopened on motion, *ab initio,* to avoid any running of the statute of limitations.

SO ORDERED.