**Randolph C. RELIHAN, Jr., Appellant,**

v.

**The EXCHANGE BANK, Appellee and Cross-Appellant.**

No. CV585–026.

Bankruptcy No. 583–00121.

United States District Court, S.D. Georgia, Waycross Division.

Nov. 11, 1985.

---

James H. Rollins, Laurie H. Ross, Atlanta, Ga., Norman M. Shved, Millen, Ga., for appellant.

Stephen L. Jackson, Waycross, Ga., for appellee and cross-appellant.

## ORDER

EDENFIELD, District Judge.

This case is before the Court on appeal from the United States Bankruptcy Court for the Southern District of Georgia, Judge Herman W. Coolidge, presiding. The issue is whether a secured creditor loses its lien as a result of its failure to file a proof of claim in a Chapter 11 bankruptcy proceeding.

### I. *Background*

The following facts are not in dispute. The appellant, Randolph C. Relihan, Jr. (hereinafter the "Debtor"), filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 2, 1983. Subsequently, on September 20, 1983, Debtor filed his schedules and statement of affairs, listing appellee and cross-appellant, The Exchange Bank of Douglas (hereinafter the "Bank"), as a secured creditor. The Debtor listed the debt to the Bank as "DISPUTED AS TO AMOUNT."[1] (R. 8).

On September 22, 1983, the Bankruptcy Court sent out a notice to all secured creditors, fixing the time for filing proofs of claim as February 1, 1984. The notice provided in pertinent part that:

The debtor [or trustee] has filed or will file a list of creditors and equity security holders pursuant to Rule 1007. Any creditor holding a listed claim which is not listed as disputed, contingent, or unliquidated as to amount, may, but need not, file a proof of claim in this case. Creditors whose claims are not listed or whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim on or before February 1, 1984, which date is hereby fixed as the last day for filing a proof of claim. Any creditor who desires to rely on the list has the responsibility for determining that he is accurately listed.

(R. 18). There is no indication that the Bank failed to receive the notice. Yet, the Bank has never filed a proof of claim with the Bankruptcy Court.

On February 22, 1984, Debtor filed his first proposed plan of reorganization which provided, with respect to the Bank, that it would receive a new note secured by a deed to secure debt on the same property which

1. The disputed amount shown by the Debtor was $85,636.14. In fact, the Debtor listed *all* debts to his secured creditors as "DISPUTED AS TO AMOUNT." (R. 8–9). It appears from the record that the pre-petition promissory note to the Bank was in the amount of $53,145.89, signed November 7, 1979, and secured by a deed to secure debt on approximately thirty-eight acres in Coffee County, Georgia. (R. 8, 22–23).

secured the pre-petition debt. The new note was to be in the full amount of the Bank's "claim," which was defined in the plan as "a duly listed or timely filed claim which is allowed and ordered paid by the Court." (R. 27, 30). The new note to the Bank under the plan was to have different and more favorable terms to the Debtor than those provided under the Bank's pre-petition note.[2] (R. 30). When the Bank failed to prove the amount of its claim, and when it became necessary for the Debtor to fix an amount for the new note to the Bank prior to the confirmation of the plan, Debtor submitted a first modified plan of reorganization to provide that the new note would be in the amount of $61,500. (R. 59). With the Bank still having failed to prove the amount of principal or interest owed to it, Debtor filed a second modified plan of reorganization on January 2, 1985, providing for a new note in the amount of $43,-200.[3]

On January 4, 1985, the Bankruptcy Court issued an Order confirming the Debtor's plan of reorganization as modified. The Bankruptcy Court reasoned that although the Bank could not be treated as a creditor with respect to voting or distribution since it did not file a proof of claim,[4] its inaction did *not* extinguish the Bank's valid pre-petition lien, citing § 506(d)(1)[5] of the Bankruptcy Code.[6] The Bankruptcy Court construed this section to provide "that a valid pre-petition lien remains valid during and after a bankruptcy action unless a party in interest takes affirmative steps to avoid the lien." (R. 68). The

Bankruptcy Court went on to confirm the Debtor's modified plan under § 1129 of the Bankruptcy Code, making the following express provision for the Bank's pre-petition lien:

> Nothing in the plan, or in this Order confirming the plan, shall be construed to divest any lien of the Exchange Bank of Douglas or limit the rights of the Bank to satisfy any pre-petition or post-petition claim against the Debtor out of property which secures such claim. The Debtor's personal, pre-petition obligation to the Exchange Bank is discharged, and the Debtor's sole remaining personal obligation to the Bank is as set forth in the plan.

(R. 71).

The Debtor then moved for reconsideration of the Order confirming the plan on January 14, 1985, with the Bankruptcy Court denying same on January 18, 1985. Notice of Appeal from the Bankruptcy Court's Order of January 18, 1985, was filed by the Debtor on February 15, 1985, and later amended on February 25, 1985, to include Debtor's desire to appeal the Bankruptcy Court's Order of January 4, 1985. (R. 92, 95). The Bank filed its Notice of Cross-Appeal on February 22, 1985. (R. 93). This Court has jurisdiction of this appeal pursuant to 28 U.S.C. §§ 158 & 1334.

II. *Law and Analysis*

A. Standard of Review

The applicable standard of review of decisions of the Bankruptcy Court is found in

---

**2.** The new note would bear interest at twelve percent, whereas the pre-petition note was one bearing 15.22 percent.

**3.** Debtor contends that these downward adjustments in the new note were made to reflect payments he had already made to the Bank.

**4.** Bankruptcy Rule 3003(c)(2) provides in pertinent part:
*Who Must File:* Any creditor ... whose claim is ... scheduled as disputed ... shall file a proof of claim or interest within the time provided by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purpose of voting and distribution.

**5.** The version of § 506(d)(1) of the Bankruptcy Code in effect at the time this proceeding arose provides:
(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
(1) a party in interest has not requested that the court determine and allow or disallow such claim under Section 502 of this title. ...

**6.** Since this case began prior to the 1984 Amendments to the Bankruptcy Code, all references to the "Code" reflect the law as it existed under the 1978 Bankruptcy Code.

Bankruptcy Rule 8013. It states in pertinent part: "Findings of fact shall not be set aside unless clearly erroneous...." Rule 8013 does not, however, prevent this Court from reviewing the legal conclusions of the Bankruptcy Court. This Court must independently determine the accuracy of the legal conclusions made below on the basis of the facts shown. *In re Pickus*, 26 B.R. 171, 173 (D.Conn.1982).

### B. Discussion

■ This appeal raises the question as to the status of a lien creditor who fails to file a proof of claim. The answer is found in the interaction of two provisions of the Bankruptcy Code: § 506(d)(1) and § 1141. The Bankruptcy Court found that the two sections were not in conflict, and that its treatment of the Debtor gave full effect to the requirements of both sections. (R. 87). This Court agrees and affirms.

Sections 501 and 1111 of the Code govern the filing of proofs of claims. In a Chapter 11 proceeding, only creditors whose claims are listed by the debtor as "disputed, contingent, or unliquidated" are required to file proofs of claim.[7] Bankruptcy Rule 3003(c)(2) directs that a creditor so listed *must* file, and that one who fails to do so will not be treated as a creditor "with respect to such claim for the purposes of voting and distribution." [8] This rule does not, however, extinguish a creditor's lien as a penalty for failure to file a proof of claim.

In fact, the legislative history of § 501(a) indicates that it is "permissive only, and that no creditor is required to file a proof of claim." 3 *Collier on Bankruptcy* ¶ 501.01 (15th ed. 1985). However, "the filing of a proof of claim is a prerequisite to the allowance of unsecured claims, including the unsecured portion of a secured claim,[9] and priority claims." *Id.* Furthermore, "[f]iling a proof of claim may be unnecessary ... in situations in which the creditor is secured and has not asserted a claim against the estate, and no determination under section 506(d) has been requested." *Id.*

Section 506(d)(1) is made applicable to Chapter 11 proceedings through § 103(a) of the Bankruptcy Code.[10] The Bankruptcy Court construed § 506(d)(1) to mean that a "valid pre-petition lien remains valid during and after a bankruptcy action unless a party in interest takes affirmative steps to avoid the lien." (R. 68). Debtor attacks this holding, arguing that the two cases cited by the Bankruptcy Court[11] in support of its holding were decided under Chapter 7, not Chapter 11, and that the different purposes of Chapter 7 (liquidation) and Chapter 11 (reorganization) demand that those decisions not control here. To apply rule of those cases, Debtor argues, would frustrate the terms of the reorganization plan and Congressional intent. To effectuate the purposes of Chapter 11, the Debtor contends that § 1141, not § 506(d)(1),

---

7. 11 U.S.C. § 1111(a) provides:
   (a) A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.
   Section 501, referred to in § 1111(a), provides in pertinent part:
   (a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.
   (b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.
   (c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

8. *See supra* note 4.

9. Although there is no evidence in the record which shows the exact amount of the Bank's lien, it is clear that the value of the land granted to the Bank under the debt deed *exceeds* the amount owed under the promissory note. Thus, the Bank holds no unsecured debt.

10. Section 103(a) provides: "... chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, or 13 of this title."

11. *See In re Atoka Agricultural Systems*, 39 B.R. 474 (Bankr.E.D.Va.1984); *United Presidential Life Insurance Co. v. Barker*, 31 B.R. 145 (N.D. Tex.1983).

should control. The Debtor argues that the two sections are in conflict, and that the specific provision (§ 1141) should prevail over the general one (§ 506(d)(1)). Debtor asserts that § 1141's confirmation provisions free all the debtor's property from any pre-petition liens notwithstanding § 506(d)(1),[12] and vest all the debtor's property in him free and clear.[13] Debtor argues that the Bankruptcy Court was without authority to undermine a confirmed plan that provided for specific treatment of the secured debt by allowing the survival of a conflicting pre-petition lien, and that it erred in protecting a creditor that never filed a proof of claim.

The Debtor is correct in his assertion that the two cases cited by the Bankruptcy Court were not Chapter 11 cases. However, except for his "policy" argument, the Debtor cannot cite any authority which prohibits application of the rule of § 506(d)(1) throughout *all* chapters of the Bankruptcy Code. Although there are few cases dealing with the interplay of § 506(d)(1) and Chapter 11, one recent decision in this area requires attention here. The case is *Matter of Tarnow*, 749 F.2d 464 (7th Cir.1984).

In *Tarnow*, the Commodity Credit Corporation, ("CCC") loaned a farmer named Tarnow money, secured by a lien on his crops and equipment. Tarnow subsequently filed a bankruptcy petition under Chapter 11. *Id.* CCC filed its proof of claim two months after the deadline for filing had passed, and the bankruptcy judge disallowed CCC's claim and declared its lien extinguished. On appeal, the Seventh Circuit, speaking through Judge Posner, held that a creditor with a loan secured by a lien on assets of a debtor who becomes bankrupt before the loan is repaid may ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt. *Id.* at 465. The court then turned to § 506(d) of the Bankruptcy Code and made some observations that are relevant here. First, the court stated that § 506(d)(1) of the 1978 Code simply codified the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), a rule that permits liens to pass through bankruptcy unaffected. *Id.* at 466.

Second, the court noted that in 1984 Congress amended the ambiguous language of § 506(d)(1) to more clearly reflect its will. The Seventh Circuit stated:

> 5 *Collier on Bankruptcy* ¶ 1141.01[3] (15th ed. 1985).

**12.** Debtor cites in support of its argument the following excerpt from *Collier on Bankruptcy:*

> There are several points which should be noted in connection with [section 1141(c)]. First, as a general rule, property transferred to a successor by the debtor is transferred free of claims and encumbrances of creditors and the interests of the debtor, whether the debtor is an individual, partnership, or corporation, except to the extent that provision is made for such claims and interests in the plan or the order. Thus, if a secured creditor is not scheduled under section 1111(a) and with notice of the proceedings does not file a claim or participate in the case, the collateral will vest in the reorganized debtor free and clear of the creditor's lien. Second, if the property is retained by the debtor, such property is free of all claims, encumbrances, and interests not specifically provided for in the plan or in the order of confirmation ... Third, section 1141(c) contains the language "[the property dealt with by the plan is free and clear of all] claims and interests of creditors...." A creditor may not only have a claim as defined in section 101(4), but may have an interest in the debtor's property to secure the claim.

**13.** The Debtor cites the following portion of *In re American Properties, Inc.*, 30 B.R. 239, 246 (Bankr.D.Kan.1983), in support of his position:

> Confirmation of a chapter 11 plan has three effects. First, all creditors are bound by the provisions of a plan whether or not the creditor is impaired and whether or not the creditor files a claim. 11 U.S.C. § 1141(a). Second, all property vests in the debtor, 11 U.S.C. 1141(b), "free and clear of all claims and interests of creditors ... except as otherwise provided in the plan or in the order confirming the plan." 11 U.S.C. § 1141(c). Third, a ... debtor is discharged of all debts arising before confirmation, whether or not a proof of claim is filed. 11 U.S.C. § 1141(d). The effect of these provisions are [sic] far-reaching. After confirmation of a chapter 11 plan, a creditor's lien rights are only those granted in the confirmed plan. A creditor no longer can enforce its preconfirmation lien rights; a creditor must seek to enforce its lien rights granted in the plan, rather than its pre-chapter 11 lien rights....

[I]n 1984 Congress enacted a new section 506(d)(2), replacing the former 506(d)(1), and the new section preserves the lien if the claim "is not an allowed secured claim due only to the failure of any entity to file a proof of such claim...." Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 93–353, § 448(b), 98 Stat. 374. The change was intended "to make clear that the failure of the secured creditor to file a proof of claim is not the basis for avoiding the lien of the secured creditor." S.Rep. No. 65, 98th Cong., 1st Sess. 79 (1983) ... The previous statutory language really was unclear, and the amendment merely brings it into phase with the logical implications of the *Long v. Bullard* line of cases, which we know Congress meant to approve when it first enacted section 506(d) in 1978.

*Id.* at 467.

The Bank was therefore within its rights in "ignoring" bankruptcy and looking to the lien for satisfaction of its debt. Since no party in interest took steps to avoid the Bank's lien, it must stand. The Debtor had the opportunity to contest the Bank's lien, but chose not to do so. Moreover, if the Debtor had wanted to protect his estate, he could have filed a proof of claim *for the Bank* under § 501(c) [14] when the Bank failed to do it.

Furthermore, it is evident from reading §§ 506(d)(1) and 1141 that they do *not* conflict and can be harmoniously construed. Section 506(d)(1) deals with "liens." Section 1141(b) revests the property of the estate in the debtor,[15] while 1141(c) makes all the property dealt with by the plan "free and clear of all *claims* and *interests* of creditors...." [16] Despite Debtor's citations to the contrary,[17] § 1141 does not act to extinguish valid pre-petition *liens*.

Code § 1141(b) applies *only* to property of the Chapter 11 estate. Under Code § 541(a)(1), an estate becomes vested with an interest no greater than the debtor's—in the case of the thirty-eight acres in Douglas County—an interest subject to the Bank's lien. Upon confirmation of the plan, § 1141(b) revested in the Debtor the estate's interest in the property—again an interest subject to a lien.

Moreover, § 1141(c) does *not* free the revested property of *liens*. The language of § 1141(c) is "free and clear of any *claim* or *interest*." "Claim" is defined in Code § 101(4).[18] A "claim" is distinct from a "lien," which is defined in Code § 101(31).[19] The term "interest" is not defined in the Code, "but it would be odd if Congress had chosen that undefined term to mean 'lien,' when they could have used the defined term 'lien' and avoided uncertainty." *In re Honaker,* 4 B.R. 415, 417 (Bankr.E.D.Mich. 1980) (construing similar language in Code § 1327(c)). The excerpt from *Collier on Bankruptcy* in footnote 12, *supra,* is based on an incorrect reading of the statute. The editors of *Collier* fail to cite any authority for their assertion that creditors who fail to file proofs of claim have their liens extinguished. Since *In re American Properties, Inc.,* cited in footnote 13, *supra,* relies on *Collier* for its holding, it is wrongly decided.

---

14. *See supra* note 6.

15. Section 1141(b) provides:
    (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

16. Section 1141(c) provides:
    (c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

17. *See supra* notes 12 and 13.

18. "[C]laim means—
    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...."

19. "[L]ien means charge against or interest in property to secure payment of a debt or performance of an obligation[.]"

■ Finally, the Bankruptcy Court did not act outside of its authority in making express provision for the Bank's "conflicting" lien in the Order of confirmation. In several subsections of § 1141 appear the words: "Except as otherwise provided in the plan *or the order confirming the plan* ...."[20] This terminology shows conclusively that the Bankruptcy Judge had the authority to include in the Order of confirmation a recognition of the continued existence of the lien, and the Bank's rights against the land *in rem*.

### III. *Conclusion*

The Orders of the Bankruptcy Court are AFFIRMED.

---

**20.** *See supra* notes 15 and 16.