In re ARCTIC ENTERPRISES, INC., Debtor.

MINSTAR, INC., f/k/a Arctic Enterprises, Inc., Plaintiff/Respondent,

v.

PLASTECH RESEARCH, INC., Defendant/Appellant.

BKY 3–81–280.

Civ. 4–85–1370.

United States District Court,
D. Minnesota,
Fourth Division.

March 3, 1986.

---

John C. Thomas and Robert Gust, Oppenheimer, Wolff, Foster, Shepard & Donnelly, Minneapolis, Minn., for plaintiff/respondent.

Maclay R. Hyde and Regina M. Chu, Bassford, Hecke, Lockhart & Mullin, Minneapolis, Minn., for defendant/appellant.

MacLAUGHLIN, District Judge.

This matter is before the Court on appellant Plastech Corporation's appeal from an order of the bankruptcy court. The order of the bankruptcy court will be affirmed.

**FACTS**

Appellant is a Minnesota corporation and the successor in interest to Arctic Enterprises, Inc., a manufacturer of snowmobiles headquartered in Thief River Falls, Minnesota. Defendant Plastech Corporation, formerly known as Plastech Research, Inc., is a Rush City, Minnesota corporation engaged in the manufacture of plastic tools and molding.

On February 17, 1981, Arctic Enterprises, Inc. filed a chapter 11 petition in bankruptcy. Prior to that date Plastech and Arctic had engaged in a continuing business relationship, whereby Plastech manufactured molded plastic parts and equipment upon the order and specifications of Arctic. Pursuant to this relationship, molds, tooling, dies, and equipment owned by Arctic were in Plastech's possession.

On the date of Arctic's bankruptcy filing, Plastech was a creditor of Arctic in the amount of $105,905. Arctic's chapter 11 petition listed Plastech as an unsecured creditor in that amount. Plastech was not included in the listing of secured creditors.

On September 4, 1981 Arctic filed a plan of reorganization with the bankruptcy court. The plan was approved by the bankruptcy court in an order dated December 4, 1981. Significantly, at no time prior to entry of the confirmation order did Plastech object to the reorganization plan or to its treatment under the plan as an unsecured creditor. Neither the order confirming the plan nor the plan itself provides for or makes reference to a lien or secured interest in Arctic property in favor of Plastech.

Following confirmation of the plan of reorganization Plastech retained the Arctic tools and equipment in its possession. In June, 1982, pursuant to the plan of reorganization Arctic sold the molds, tooling, dies, and equipment to Certified Parts Corpora-

tion. Plastech, however, refused to relinquish possession of the tools and equipment. Plastech claimed that it had a secured interest in the tools and equipment and demanded payment of the value of its interest in the tools and equipment as a condition of their release. On August 10, 1982 Arctic, under protest, paid to Plastech the claimed amount of the security lien, $58,290.79, thereafter obtaining release of the goods from Plastech.

Some two years later Arctic's successor in interest, Minstar, Inc., brought this action seeking to recover the $58,290.79 paid to Plastech to obtain release of the tools and equipment, on the theory that Plastech's interest in the tools and equipment was unsecured and that, therefore, its withholding of them was wrongful. By order dated March 29, 1985, the bankruptcy court denied Plastech's motion to dismiss for lack of subject matter jurisdiction. By order dated August 30, 1985 the bankruptcy court granted Minstar's motion for summary judgment as to some but not all issues in the case. Plastech then sought leave of the Court for interlocutory appeal of the bankruptcy court's August 30 order. By order dated November 22, 1985 the Court granted Plastech's motion for leave to appeal.

## DISCUSSION

■ Before the Court are three issues of law[1] appealed from the August 30, 1985 order of the bankruptcy court:

1. whether the Court has subject matter jurisdiction over this post-confirmation proceeding;

2. assuming the Court has subject matter jurisdiction, whether the Court should exercise its discretionary power to abstain from exercising jurisdiction of the case;

3. assuming the Court has subject matter jurisdiction and determines not to abstain from exercising that jurisdiction, whether an order of the bankruptcy court confirming a plan of reorganization entered pursuant to 11 U.S.C. § 1141 operates to extinguish unsecured liens in the debtor's property.

### A. Subject Matter Jurisdiction

#### 1. Validity of Plastech's Appeal

■ As a preliminary matter, it should be pointed out that the August 30 order of the bankruptcy court here appealed from does not in any way make reference to the jurisdictional and abstention issues raised by Plastech. Plastech's jurisdictional objections were dealt with by the bankruptcy court's March 29, 1985 order. Plastech's motion for leave to appeal the March 29 order was untimely.[2] Accordingly, the jurisdictional issues were not before the bankruptcy court at the time the August 30 order was issued. Nevertheless, the Court may properly consider Plastech's jurisdic-

---

1. Because the above-referenced issues are issues of law the Court's review is de novo. *Carlson v. Farmers Home Administration*, 744 F.2d 621 (8th Cir.1984); *Northwest Airlines, Inc. v. Klinger*, 563 F.2d 916 (8th Cir.1977); *Securities and Exchange Commission v. J. Shapiro Co.*, 414 F.Supp. 679 (D.Minn.1975); *Dinning v. Wills*, 4 B.R. 475 (E.D.Ark.1980). The applicable standard of review of decisions of the bankruptcy court is found in Bankruptcy Rule 8013. It states in pertinent part: "Findings of fact shall not be set aside unless clearly erroneous...." Rule 8013 does not, however, prevent this Court from reviewing the legal conclusions of the bankruptcy court. This Court must independently determine the accuracy of the legal conclusions made below on the basis of the facts shown. *In re Pickus*, 26 B.R. 171, 173 (D.Conn. 1982).

2. Notice of appeal of an order of the bankruptcy court must be filed within ten days of the date of the order. The bankruptcy court may extend the time for filing notice of appeal for 20 days upon a showing of excusable neglect, provided that the motion for leave to extend the time for filing notice of appeal is itself filed no more than 20 days after the expiration of the ten-day period for filing notice of appeal. Bankruptcy Rule 8002(c). Plastech filed its motion for leave to extend the time in which to appeal April 10, 1985. When Minstar resisted Plastech's efforts to obtain an extension, Plastech desisted from further attempts to appeal the March 29 order. Plastech did not renew its jurisdictional objections when resisting Arctic's motions for summary judgment. Accordingly, the jurisdictional issues had not been briefed or argued before the bankruptcy court when it entered its August 30 order.

tional objections in this appeal. It is well established that an issue of the subject matter jurisdiction of the Court may be raised at any time by a federal court *sua sponte,* and that it is the duty of every federal court to raise this issue as a "threshold inquiry" in all federal proceedings. *In re Dr. C. Huff Co., Inc.,* 44 B.R. 129, 133–34 (Bankr.W.D.Ky.1984) *citing In re Maine Marine Corp.,* 20 B.R. 426 (Bankr.D.Me.1982); *In re Curtina International,* 15 B.R. 993 (Bankr.S.D.N.Y. 1981); *Matter of Kutner,* 656 F.2d 1107 (5th Cir.1981); *Save the Bay, Inc. v. United States,* 639 F.2d 1100 (5th Cir.1981); *American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). *See also In re Dreske Greenway Trust,* 14 B.R. 618 (Bankr.D.Wis.1981) (issue of subject matter jurisdiction of the bankruptcy court may be raised at any time).

### 2. The Merits of Plastech's Jurisdictional Objections

Plastech raises two arguments in support of its objections to jurisdiction.

■ First, Plastech contends that the December 4, 1981 order of the bankruptcy court divested the Court of further jurisdiction of the case. Specifically, Plastech points to paragraph 10 of the December 4, 1981 order, which provides that:

This Court shall retain jurisdiction of Debtors subsequent to the date of this Order for the purpose of allowing claims and hearing objections, if any, thereto, *for conducting and completing adversary proceedings filed prior to the date of this Order* for the purpose of determining or resolving any defaults, disputes, or similar matters under the Plan or the Agreement between Debtors and Lenders of July 14, 1981 ... and for the purpose ... of determining that obligations and liabilities of the debtors if any arising out of the claims of the Inter-

nal Revenue Service for income, exise [sic] and employment taxes for the taxable periods ending March 31, 1976, March 31, 1977, March 31, 1978, March 31, 1979, and March 31, 1980 in accordance with the Repayment Agreement between the United States of America and the Debtors dated October 22, 1981 and for the purpose of approving administrative expenses after confirmation of the plan, if any, and such related matters. *In all other respects, the Court, from the date of this Order, hereby specifically relinquishes jurisdiction over the Debtors and their business operations.*

The Court finds that the bankruptcy court did not divest itself of jurisdiction. The bankruptcy court in the confirmation order specifically retained jurisdiction over debtors "for the purpose of allowing claims and hearing objections, if any [to the confirmed plan of reorganization]." This matter may be construed as a "claim" by Minstar pursuant to the plan of reorganization.

■ Second, Plastech contends that this proceeding is unrelated to Arctic's chapter 11 bankruptcy case, and as such does not "arise under" chapter 11.

The Bankruptcy Amendments[3] and Federal Judgeship Act of 1984 vests in the federal courts jurisdiction over (a) cases under Title 11 and (b) civil proceedings arising under, arising in, or related to Title 11 cases. 1 *Collier on Bankruptcy* ¶ 3.01 at 3–20 (15th ed. 1985). The courts' jurisdiction over bankruptcy "cases" is original and exclusive, while jurisdiction over bankruptcy civil proceedings is original but not exclusive. *Id.* Thus, whether the Court has jurisdiction over this adversarial proceeding turns on whether the matter fits within one of the four categories of cases and proceedings cognizable under Title 11:

    A. A case under Title 11;

    B. A civil proceeding arising under Title 11;

---

**3.** Because the jurisdictional language of section 1334 of the 1984 Bankruptcy Act is identical to the language of section 1471 of the 1978 act, the courts have recognized that cases construing the latter are of valid precedential authority in interpreting the former. *In re Environmental Research & Development, Inc.,* 46 B.R. 774, 777 (S.D.N.Y.1985).

C. A civil proceeding arising in a case under Title 11;

D. A civil proceeding related to a case under Title 11.

*See In re S.E. Hornsby & Sons Sand & Gravel Co., Inc.,* 45 B.R. 988, 994 (Bankr. M.D.La.1985).

The parties have not contended that the matter before the Court is a "case" under Title 11.[4] Rather, Minstar contends, and the bankruptcy court found, that this matter is a core civil proceeding arising in a case under Title 11. *See Minstar v. Plastech,* BKY 3–81–280, slip op. at 5 (Bankr.D. Minn. Mar. 29, 1985). Under the provisions of section 157(b)(1) of the bankruptcy code the bankruptcy courts have authority to hear and decide core proceedings which arise from a case under the bankruptcy code. *Huff,* 44 B.R. at 134. Core proceedings have been defined to include "most matters which are integral to the adjudication of bankruptcy or were traditionally before the bankruptcy court." *Gaslight Club, Inc. v. Official Creditors Committee,* 46 B.R. 209, 211 (N.D.Ill.1985). The *Collier* treatise identifies four species of core proceedings: (a) matters of administration, (b) avoiding actions, (c) matters concerning property of the estate, and (d) others. *Collier,* ¶ 3.01 at 3–28.

Section 157(b)(2) contains fifteen illustrations of core proceedings. Specifically included in the list of core proceedings are: "determinations of the validity, extent, or priority of liens." *See* 28 U.S.C. § 157(b)(2)(K). This matter is concededly one to determine both the validity and extent of a prepetition lien on property of the debtors. Thus, it is a core proceeding subject to federal court jurisdiction. That the extent and validity of a prepetition lien on property of the debtor is properly within the subject matter jurisdiction of the federal courts was made clear in the recent case of *In re Owensboro Canning Co., Inc.,* 46 B.R. 607 (Bankr.W.D.Ky.1985). In that case an unsecured creditor brought suit

following the debtors' filing of a chapter 11 petition but prior to confirmation of the plan of reorganization. The court found that the matter was properly before the court as a core proceeding, citing section 157(b)(2)(K).

■ The fact that Minstar's action is a section 157(b)(2) "core proceeding" does not end the matter however. Generally, in order for federal subject matter jurisdiction to obtain in a bankruptcy case, the dispute must be in some way connected to property of the debtor or the debtor's estate. Whether characterized as a civil proceeding arising under Title 11 or a case under Title 11 or as a related case, the bankruptcy court may not exercise jurisdiction over claims which involve neither the debtor as a party nor assets or liabilities of the debtor's estate. *In re Destron, Inc.,* 38 B.R. 310, 313 (Bankr.N.D.Ill.1984) *citing In re Hall,* 30 B.R. 799, 802 (M.D.Tenn.1983); *United Coal Co. v. Hoyer,* 29 B.R. 1019, 1022 (W.D.Va.1983); *In re General Oil Distributors, Inc.,* 21 B.R. 888, 892 n. 13 (Bankr.E.D.N.Y.1982); *In re Wesco Products Co.,* 19 B.R. 908, 909 (Bankr.N.D.Ill. 1982) (if action against non-debtor will affect debtor's schedules of assets or liabilities filed in the bankruptcy case, such action is a "related proceeding" over which bankruptcy court may exercise jurisdiction). *See,* for example, the following cases holding that federal subject matter did not exist where property of the debtor was not the subject of the dispute. *In re H & S Transportation Co., Inc. v. Helena Fuel and Harbor Service, Inc.,* 35 B.R. 67 (Bankr.M.D.Tenn.1983); *In re Dickenson Lines, Inc.,* 47 B.R. 653, 656 (Bankr.D. Minn.1985); *In re United Dept. Stores, Inc.,* 39 B.R. 54 (Bankr.S.D.N.Y.1984).

■ Here, the debtor's property is not the object of the dispute. The molds, tooling, dies, and equipment owned by Arctic but in the possession of Plastech have long since passed into the hands of a third party. Arctic's successor, Minstar, seeks to

---

4. The case referred to in section 1471(a) is the case upon which all of the proceedings which follow the filing of the petition are predicated.

*Collier,* ¶ 3.01. It is the bankruptcy case *per se. Hornsby,* 45 B.R. at 994.

recover not property owned by it, but rather funds paid to Plastech to obtain release of that property.

While property of the debtor is not directly in dispute, nevertheless, the Court finds that subject matter jurisdiction of this matter does obtain in the federal courts, for two reasons.

First, while property of the debtor is not the subject of the dispute, the debtor's successor in interest is a party to the action.

Second, any recovery by the debtor will serve to augment the estate. The courts have stated that a bankruptcy proceeding not involving property of the debtor is nevertheless federally cognizable if a ruling in favor of the debtor would serve to augment the estate by returning disputed funds or property to the debtor's possession. In the case of *In re Environmental Research & Development, Inc.*, 46 B.R. 774 (S.D.N.Y.1985) it was stated:

> Moreover, because one of the central purposes of the federal bankruptcy laws is to marshall the estate of the debtor, proceedings which seek to augment or recover assets of the bankrupt's estate should usually be viewed as arising under the laws of the United States.

*Environmental Research*, 46 B.R. at 778. Similarly, in the case of *In re Erlin Manor Nursing Home, Inc.*, 36 B.R. 672 (Bankr.D. Mass.1984) it was stated that an action on the debtors' right to reimbursement for alleged overpayments to a creditor was one involving a property interest of the estate, particularly where the creditor's refusal to reimburse the debtor "interfered with the object of reorganization." *Erlin*, 36 B.R. at 676–77. *See also In re Southern of*

*Rocky Mount, Inc.*, 36 B.R. 175 (Bankr.E. D.N.Car.1983) (action by debtor to recover fire insurance proceeds in petition of debtor at time of filing of the chapter 11 possession but in the hands of a creditor at the date of the lawsuit was one involving property of the debtor's estate). Minstar's recovery of the disputed funds was an integral part of the plan of reorganization. Denying to Minstar a federal forum in which to pursue recovery of the funds would "interfere with" the plan of reorganization.

In sum, because this matter concerns the validity and extent of a lien, and because any recovery by Minstar would augment the debtor's estate, the Court finds that subject matter jurisdiction obtains over this action.

## B. Abstention

Defendant next argues that the Court should abstain from deciding this case.

■ The Code includes three abstention provisions.[5] The section relevant here, section 1334(c)(1), gives the court provision to abstain from hearing proceedings arising under Title 11. *Hornsby*, 45 B.R. at 995. Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

■ Generally, the Court's discretionary power to abstain may be exercised in "comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Abstention is called for where it is more ap-

---

5. Section 1334(c)(2) provides for mandatory abstention if certain requirements are met:

> (a) a timely motion is made; (b) the proceeding is based upon a state law claim or state law cause of action; (c) the proceeding is related to a case under Title 11; (d) the proceeding does not arise under Title 11; (e) the proceeding does not arise in a case under Title 11; (f) the action could not have been commenced in a court of the United States absent jurisdiction under 28 U.S.C. § 1334;

> and (g) an action is commenced and can be timely adjudicated in a state forum of appropriate jurisdiction.

*See Hornsby*, 45 B.R. at 996. *See* 28 U.S.C. § 1334(c)(2).

As both parties have recognized, the mandatory abstention provisions of section 1334(c)(2) are inapplicable here because this is a civil proceeding arising in a case under Title 11. In addition, section 305 gives the Court discretion to abstain from hearing a case under Title 11.

propriate to have a state court hear a particular matter of state law, *In re Kimrey*, 10 B.R. 466 (Bankr.M.D.N.C.1981), or where the moving party is not acting in good faith in seeking to obtain federal court jurisdiction, *In re Jewel Terrace Corp.*, 3 B.R. 36 (Bankr.E.D.N.Y.1980), or where the state court is a more convenient and better suited forum for resolving the issues. *In re Palmer Construction Co.*, 7 B.R. 232 (Bankr.D.S.D.1980); *In re Southeastern Farm Supply, Inc.*, 11 B.R. 89 (Bankr.M.D.Ala.1981). If no other federal, state, or local court has jurisdiction over the proceedings however, abstention is not appropriate. *In re Zamost*, 7 B.R. 859 (Bankr.S.D.Cal.1980).

■■ The Court finds that abstention is not appropriate in this case. The case does include state law claims; however, the predominant issue is one of federal law, namely, the validity of a prepetition lien following the bankruptcy court's confirmation of a plan of reorganization. Thus, respect for state laws or the interests of comity with state courts does not require that the federal court abstain. As the bankruptcy court pointed out in its order of March 29, 1985, denying defendant's motion for abstention, "[t]his case clearly revolves around the affect of a confirmation order of the [bankruptcy] court," and as such is "clearly a federal law issue, since the plan confirmation order arises out of a federal statute." Slip op. at 7. No proceeding has been instituted in state court to which the parties may turn. Given the extensive time and effort already devoted to federal court litigation in this case by the parties, abstention at this time is particularly inappropriate. Nothing is to be gained by sending the parties back to square one in state court at this late date.

Accordingly, defendant's motion seeking federal court abstention will be denied.

## C. Validity of Defendant's Lien

■■ The final issue before the Court is whether the bankruptcy court was correct in ruling that the order confirming Arctic's plan of reorganization extinguished the prepetition lien held by Plastech.

In an able opinion, the bankruptcy court determined that a confirmed plan of reorganization does extinguish liens not expressly preserved by the plan. The Court finds that the bankruptcy court ruled correctly, and that the confirmed plan did extinguish the Plastech lien.

The logical starting point for analysis is section 1141 of the Code. Section 1141 provides:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141. The bankruptcy court found that section 1141(c) was the crucial section, providing *"[e]xcept as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors...."* (Emphasis added.) The difficulty with this apparently straightforward provision is that it makes reference to the "claims and interests" of creditors, but does not men-

tion creditors' "liens." Minstar argues, and the bankruptcy court found, that the term "interests" as used in section 1141(c) subsumes the term "lien." As authority for this proposition the bankruptcy court cited several sections of the code wherein the word "interest" is commonly understood to mean all property rights including lien rights. *See, e.g.,* 11 U.S.C. §§ 101(28), 361, 363(f), 363(h), and 541. For example, in section 361 of the Code, setting forth procedures for adequate protection, the term "interest" has been judicially construed to encompass liens. *See In re Aegean Fare, Inc.,* 34 B.R. 965 (Bankr.D.Mass. 1983); *In re South Village, Inc.,* 25 B.R. 987 (Bankr.D.Utah 1982). Section 363(f)(3) permits a bankruptcy trustee to sell property "free and clear of any *interest* in such property of an entity other than the estate," provided that "*such interest is a lien ...*" and certain price restrictions are met. 11 U.S.C. § 363(f)(3); *In re Jam Fine Furniture, Inc.,* 19 B.R. 578 (Bankr.S.D. Fla.1982); *In re Terrell,* 27 B.R. 130 (Bankr.W.D.La.1983). In addition, the legislative statements accompanying section 541(a) of the Code make clear that the term "interest in property" as used in that section "is an all-embracing definition which includes ... liens [held by the debtor on property of a third party]...." 11 U.S. C.A. § 541, legislative statements. The many instances in which the term "interest" is used coextensively with the term "lien" has led courts and commentators to construe section 1141(c) as mandating that "if a secured creditor is not scheduled under section 1111(a) and with notice of the proceedings does not file a claim ... the collateral will vest in the reorganized debtor free and clear of the creditor's liens." 5 *Collier on Bankruptcy* ¶ 1141.01[3] (15th ed. 1985). As stated in the case of *In re American Properties, Inc.,* 30 B.R. 239 (Bankr.D.Kan.1983):

> Confirmation of a chapter 11 plan has three effects. First, all creditors are bound by the provisions of a plan whether or not the creditor is impaired and whether or not the creditor files a claim. 11 U.S.C. § 1141(a). Second, all property vests in the debtor, 11 U.S.C. § 1141(b), "free and clear of all claims and interests of creditors ... except as otherwise provided in the plan or in the order confirming the plan." 11 U.S.C. § 1141(c). Third, a ... debtor is discharged of all debts arising before confirmation, whether or not a proof of claim is filed. 11 U.S.C. § 1141(d). The effect of these provisions are [sic] far-reaching. After confirmation of a chapter 11 plan, a creditor's lien rights are only those granted in the confirmed plan. A creditor no longer can enforce its preconfirmation lien rights; a creditor must seek to enforce its lien rights granted in the plan, rather than its pre-chapter 11 lien rights....

*American Properties,* 30 B.R. at 246.

Plastech correctly points out that section 1141 must be read in concert with two other Code sections, sections 502 and 506. Section 502 states that where a proof of claim is filed the claim is deemed allowed unless the debtor objects. It is undisputed that Plastech filed a section 502 proof of claim on October 9, 1981, prior to the bankruptcy court's order confirming the Arctic plan of reorganization, in which it claimed a security interest in the tools and equipment. Where a section 502 proof of claim has been filed, section 506 provides for disallowance of secured claims in proceedings pursuant to section 502(b)(5) or 502(e). Thus, Plastech argues that sections 502 and 506, read together, establish that its lien was not extinguished, because (1) Plastech filed a proof of claim to which Arctic did not object, thus, Plastech's claim is "deemed allowed;" and (2) the lien underscoring that claim has not been "avoided" by Arctic-Minstar in proceedings pursuant to section 506. This position has been adopted by some courts. *See Relihan v. Exchange Bank,* 69 B.R. 122 (S.D.Ga.1985).

While it is a matter not entirely free from doubt, the Court on balance finds this reasoning unpersuasive. In a long line of cases culminating in the recent decision of the Seventh Circuit in the case of *In the*

*Matter of Tarnow,* 749 F.2d 464 (7th Cir. 1984), the courts have recognized that liens pass through bankruptcy unaffected unless a party in interest requests the court to allow or disallow the claim on which the lien is based. *See Tarnow,* 749 F.2d at 465 (collecting cases). This line of case law, however, is predominantly composed of cases construing chapter 7 of the Bankruptcy Code. The rationale for requiring the debtor to actively challenge a claim upon which a lien is based in order to extinguish the lien in a chapter 7 context is that in a chapter 7 bankruptcy there is no plan of reorganization. Hence, as the bankruptcy court found, absent a section 506 lien avoidance proceeding, in a chapter 7 case "[t]here is no other method of avoiding lien rights." Slip op. at 11.

In a chapter 11 case, in contrast, the debtor and creditors naturally look to the plan of reorganization as the final decree of the rights of the parties. As a practical matter, were Plastech's reading of the code adopted, chapter 11 reorganization would be greatly complicated, for debtors would be required to challenge the claims of each and every lienholder *prior to* submitting a plan of reorganization, in order that the extent of its liabilities be known. Under the reading of section 1141 given by the bankruptcy court, the rights of lienholders are preserved, because creditors are given an opportunity to object to the plan, and if the debtor cannot prove that the secured creditor's treatment is "fair and equitable," the entire plan fails. *See* bankruptcy court order of August 30, 1985, slip op. at 13. These practical considerations led the bankruptcy court to subscribe to the *American Properties* line of caselaw holding that a confirmed plan does extinguish prior liens. *See, e.g., In re Stratton Group, Ltd.,* 12 B.R. 471 (Bankr.S.D.N.Y.1981); Hopper, *Confirmation of a Plan Under Chapter 11 of the Bankruptcy Code and the Effect of Confirmation on Creditors' Rights,* 15 Ind.L.Rev. 501, 521–22 (1982).

Based on these practical considerations, the Court finds that the confirmed plan did extinguish the Plastech lien. Plastech had every opportunity to object to the plan of reorganization. Having failed to object, Plastech is bound by the plan.

Based upon the foregoing, IT IS ORDERED that the August 30, 1985 order of the bankruptcy court is affirmed.