In re Frederick WALKER, Debtor.

Bankruptcy No. 93–30415.

United States Bankruptcy Court,
D. New Jersey.

Dec. 23, 1993.

Kenneth S. Javerbaum, Javerbaum, Wurgaft & Hicks, Springfield, NJ, for Lorin and Helen Press.

Barry E. Levine, Voorhees & Acciavatti, Morristown, NJ, for debtor.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This constitutes the court's decision on a motion by Lorin and Helene Press ("the Presses") to reopen the chapter 7 case of Frederick Walker ("Walker" or "debtor") in order to seek a determination that their claim against the debtor is nondischargeable under section 523(a)(2) or (a)(4) of title 11, United States Code ("Bankruptcy Code" or "Code"). This court has jurisdiction under 28 U.S.C. §§ 1334(b), 157(a), and 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). For the following reasons, the motion is denied.

### I. FINDINGS OF FACT

On March 16, 1992 the Presses filed a complaint in the Superior Court of New Jersey against Frederick Walker, the debtor in this case, alleging accounting malpractice and equitable fraud. The Presses had employed Walker as their accountant and financial advisor. Their suit alleged that Walker advised them to invest in certain tax shelters from which Walker later received undisclosed commissions and other incentives. Garden State Indemnity Company, Walker's malpractice insurance provider, retained counsel to defend Walker in that action.

Walker filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 22, 1993. The state court case was still pending on the petition date. The debtor listed the Presses as creditors in the schedules filed with his bankruptcy petition. In the matrix of creditors, which contains the addresses used for service of notices, the Presses' names appear and their address is listed in care of their attorneys Javerbaum,

Wurgaft and Hicks, 966 South Springfield Avenue, Springfield, New Jersey, 07081. Both Walker and the Presses agree that the address listed in the matrix is the correct address of the Presses' attorneys.[1]

On January 29, 1993, the Clerk of the United States Bankruptcy Court mailed a notice to all creditors listed in the debtor's schedules ("the Notice"). The Notice contained the date set for the § 341 meeting of creditors as well as the deadline date set for filing complaints objecting to discharge under Code section 727 or to determine the dischargeability of a debt under Code section 523(c) ("dischargeability complaints"). The creditors' meeting was to be held on February 23, 1993 and the deadline for filing dischargeability complaints was set for April 26, 1993.

The Presses deny receiving the Notice, or having any other notice of the chapter 7 filing until April 27, 1993, one day after the deadline set for filing objections to discharge.[2] On May 17, 1993, the court entered an order granting the debtor a discharge. The Presses' attorney has admitted receiving a copy of the discharge order on May 20, 1993.

On June 1, 1993, the Presses filed a motion seeking relief from the automatic stay pursuant to Code § 362(d) in order to continue the state court action against the debtor. However, the Clerk's office returned the motion for failure to comply with the local rules and for a failure to include a notice of motion.

On June 9, 1993, the court entered a final decree closing the debtor's chapter 7 case. The Presses attempted to refile the motion for relief from the automatic stay on or about June 17, 1993. The Clerk's office rejected the motion for a second time, however, because the case had already been closed.

On August 18, 1993, the Presses filed the subject motion to reopen the debtor's case to allow them to file a dischargeability complaint against the debtor. Garden State Indemnity opposed the motion on behalf of the debtor. A preliminary hearing was conducted on September 13, 1993. At that hearing, the court requested further briefing of the issues and adjourned the matter until October 18, 1993. Both parties have submitted supplemental briefs. On October 18, 1993 the court reserved decision.

## II. CONCLUSIONS OF LAW

Section 350 of the Bankruptcy Code provides that "[a] case may be reopened in the court in which it was closed to administer other assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). There are no assets to be administered in this case and the debtor has not requested any relief. Thus, the Presses must show "other cause" to have the case reopened.

The Presses argue that they are entitled to file a dischargeability complaint, and that their right to do so is cause to reopen the case under Code section 350(b). The court agrees with the Presses that if the time to file a dischargeability complaint has not expired, the right to file such a complaint would be cause to reopen the case. The legal issue presented here, however, is whether the time to file a dischargeability complaint has expired.

### A. TIME FOR FILING DISCHARGEABILITY COMPLAINT

Code section 523(a) lists twelve types of debts which are not discharged in bankruptcy. The Presses allege that Walker obtained money from them by false pretenses and false representations, making the resulting debt non-dischargeable under Code section 523(a)(2)(A). In addition, they contend that Walker's actions gave rise to a claim for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny and

---

1. Because the Presses acknowledge that the Javerbaum firm represents them in this case, they have not raised any argument that service had to be made at their home address. *See,* however, *In re Kouterick,* 161 B.R. 755 (Bankr.D.N.J.1993) regarding that issue.

2. The moving papers contain conflicting information on this point. In the affidavit of Kenneth Javerbaum, Esq., the date is listed as April 27, 1993 while in supplemental papers the date listed is April 28, 1993. For the purpose of this motion the court will assume that April 27, 1993 is the date in question.

that the resulting debt is therefore non-dischargeable under Code section 523(a)(4).

The types of debts described in paragraphs (2), (4) and (6) of section 523(a) can be discharged, however, if a creditor fails to object to their discharge within the time provided by the Federal Rules of Bankruptcy Procedure. Section 523(c) states:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, **unless,** on **request of the creditor** to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.[3]

11 U.S.C. § 523(c) (emphasis added).

Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, however, limits the time for filing a complaint to determine the dischargeability of a debt pursuant to section 523(c). Rule 4007(c) states in pertinent part:

> A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002.

Fed.R.Bankr.P. 4007(c).

The Presses failed to file a dischargeability complaint within the time limits established by Rule 4007(c). The deadline set for filing a dischargeability complaint in this case was April 26, 1993. The Presses never filed such a complaint before the case was closed, and they did not file this motion to reopen the case until August 18, 1993, one hundred fourteen days after the deadline. Nonetheless, the Presses assert that the time limits found in Rule 4007(c) do not apply to them because they never received notice of the debtor's chapter 7 filing.

## B.  *NOTICE OF BAR DATE FOR FILING DISCHARGEABILITY COMPLAINT*

■ If the Presses did not receive notice of the deadline set for filing dischargeability complaints, denying them the opportunity to file such a complaint would violate their due process rights. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Rule 2002(f)(5) requires:

> ... the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of ... the time fixed for filing a complaint to determine the dischargeability of a debt pursuant to § 523 of the code as provided in Rule 4007(c).

Fed.R.Bankr.P. 2002(f) (emphasis added).

■ Walker's bankruptcy file contains a certification from the Clerk's office that the Clerk's office mailed the Notice to the Presses in care of their attorneys. The Presses allege that even if the Notice was mailed, it was never received. According to Bankruptcy Rule 9006(e), however, service of notice by mail is complete on mailing. Fed.R.Bankr.P. 9006(e). Under the Federal Rules of Bankruptcy Procedure, therefore, service to the Presses was complete upon the mailing of the January 29th, 1993 Notice.

In addition, "[t]here is a presumption that an item which is mailed to an accurate address has been received by the addressee." *In re Torwico Electronics,* 131 B.R. 561, 572 (Bankr.D.N.J.1991), *citing, Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932), *rev'd on other grounds sub nom., Torwico Electronics, Inc. v. State of New Jersey Dept. of Environmental Protection,* 153 B.R. 24 (D.N.J.1992), *aff'd,* 8 F.3d 146 (3rd Cir.1993). To be allowed to reopen the debtor's case and file their dischargeability complaint, the Presses must rebut the pre-

---

**3.** Section 523(a)(3)(B) makes the debts found in paragraphs (2), (4) and (6) of section 523(a) nondischargeable if the debt is neither listed nor scheduled in the debtor's petition in time to permit timely filing of a proof of claim and timely request for a determination of dischargeability. The debt owed to the Presses was listed in the debtor's schedules and therefore the exception created by § 523(a)(3)(B) is inapplicable in this case.

sumption that they received the properly addressed notice.

The Presses, through the affidavit of their attorney Kenneth Javerbaum, Esq., have certified that they never received the Notice. However,

> [w]here the bankruptcy court record shows a certificate of mailing and a complaining party submits an affidavit declaring notice was not received, the weight of the evidence favors the court's certificate. If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled. For this reason, an allegation that no notice was received does not, by itself, rebut the presumption of proper notice.

*In re Ricketts*, 80 B.R. 495, 497 (Bankr. 9th Cir. BAP 1987), *citing, In re American Properties*, 30 B.R. 247, 250 (Bankr.D.Kan.1983).

To rebut the presumption of proper notice, a creditor must prove "by clear and convincing evidence that the mailing was not, in fact, accomplished. Evidence might include testimony of a clerk's office employee that notice was not sent or proof that none of the listed creditors received notice." *Ricketts* at 498–99, (Jones, J., concurring).

The Presses allege that another creditor, Bankers Savings, failed to receive the Notice in spite of being listed on the Clerk's certification of service. The Presses base this allegation on paragraph 1(b) of Bankers Saving's proof of claim, which states that "Creditor has not received any notices from the Bankruptcy Court in this case." The Presses contend that this language proves that Bankers Savings also failed to receive the Notice.

Paragraph 1(c) of Bankers Saving's proof of claim, however, states "Creditor's address does not differ from the address on the envelope sent by the court." Paragraph 1(c) indicates that Bankers Savings received some kind of notice from the court. This language appears to contradict the language cited by the Presses. It is unclear what Bankers Savings intended by adding these statements to its proof of claim, but these statements do not prove that a second creditor failed to receive the Notice.[4]

The court recognizes that a strict application of Rules 4007(c) and 9006(e) can have harsh results. In fact, the issue raised on this motion, which arises periodically, is one of the most vexing which the court must face. The court shares the concern expressed in *Linder v. Trump's Castle Associates, et al.*, 155 B.R. 102 (D.N.J.1993), about refusing to accept a certification that a notice was not received.[5] The rules, however, are quite specific as to their application. In the absence of any other proof that the Notice to the Presses was improperly mailed or was not received, the court holds that they have failed to rebut the presumption found in Rule 9006(e) and *Hagner*.

### CONCLUSION

The Presses failed to file their dischargeability complaint within the time limits established by Rule 4007(c) and the Notice. They are therefore precluded from filing such a complaint now. There is therefore no cause to reopen the debtor's case, and the Presses' motion to reopen is denied.

The Clerk shall prepare Standard Order 18.

---

**4.** Moreover, denial of receipt of notice by three creditors listed in the bankruptcy schedules has been held to be insufficient to rebut the presumption that notice was properly served. *See In re Schepps Food Stores, Inc.*, 152 B.R. 136 (Bankr. S.D.Tx.1993).

**5.** However, *Linder* relies in part on *Pioneer Investment v. Brunswick*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), which is not appli-

cable here for several reasons. First, the Presses have expressly declined to claim excusable neglect. Second, excusable neglect is not cause to extend time for filing a dischargeability complaint under Rule 4007(c). *Compare* Rule 9006(b)(1) and 9006(b)(3). *See also Pioneer*, —— U.S. at ——, 113 S.Ct. at 1494–95, 123 L.Ed.2d at 85, n. 4.