**In re NORTHEAST OFFICE AND COMMERCIAL PROPERTIES, INC., Debtor.**

**NORTHEAST OFFICE AND COMMERCIAL PROPERTIES, INC., Plaintiff,**

v.

**SMITH VALVE CORPORATION, Defendant.**

Bankruptcy No. 91–40883.
Adv. No. 91–4136.

United States Bankruptcy Court,
D. Massachusetts.

Feb. 14, 1995.

Amended Judgment Filed
Feb. 17, 1995.

Bruce F. Smith, Jager, Smith, Stetler & Arata, P.C., Boston, MA, for Northeast Office and Commercial Properties, Inc.

Michael J. Gartland, Hale & Dorr, Boston, MA, for Smith Valve Corp.

Peter F. Davis, Boston, MA, for E.C. Murray Const. Co., Inc.

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

This is a dispute between two debtors who have reorganized under chapter 11 plans confirmed by this court. A motion for summary judgment raises two principal questions: Has there been an amendment to a timely proof of claim filed in one case by a pleading filed prior to the bar date in the present adversary proceeding, which is part of the other case? If not, to what extent should the proof of claim be treated at this late date as having been amended by a joint stipulation concerning the proof of claim, filed in the same case after the bar date, which refers to this adver-

sary proceeding? I answer the first question in the negative. As to the second, I hold the timely proof of claim has been amended, without the filing of a motion to amend, by the untimely stipulation to the extent the amended complaint in this adversary proceeding asserts claims arising from the same transaction, and that the claim as allowed is entitled to both future plan dividends and those previously due. I also discharge an attachment lien for which a debtor's plan of reorganization made no provision.

## I. FACTS

The facts are undisputed. Northeast Office and Commercial Properties, Inc. (the "Claimant") and Smith Valve Corporation (the "Debtor") filed chapter 11 petitions with this court within months of each other, the Claimant on April 2, 1991 and the Debtor on October 2, 1991. At the time of their filings, the parties were engaged in litigation in state court arising from a transaction in which the Debtor had sold to the Claimant, and leased back from the Claimant, a building in Westboro, Massachusetts containing office and manufacturing facilities. The Claimant had obtained a $185,000 attachment lien on the Debtor's real estate in Whitinsville, Massachusetts.

On July 17, 1991, the Claimant commenced this adversary proceeding as part of its own chapter 11 case. The initial complaint was identical to the complaint the Claimant had filed against the Debtor in state court. The complaint contained two counts. One alleged the Debtor had breached its contractual obligations as lessee under the parties' lease with respect to the condition of the building's roof and windows. The other alleged the same conduct was a violation of chapter 93A of the Massachusetts General Laws. The complaint sought $306,300 in damages (trebled under the 93A claim), $223,500 for the costs already incurred for repairs to the roof and $82,800 as the estimated cost for future repair of the windows.

On August 27, 1991, I authorized the Claimant to file the amended complaint presently pending. The complaint contains four counts. Count I is for the same breach of

the Debtor's lease obligations, except that it seeks damages of $623,500, composed of $223,500 for past roof repairs plus a revised estimate of $400,000 as the future cost for repairing or replacing the windows. Count II alleges the Debtor had misrepresented that the windows could be repaired when it knew repair was futile and complete replacement was necessary. Count III alleges the Debtor's conduct constitutes unfair and deceptive practices under chapter 93A of the Massachusetts General Laws, and claims treble damages. Count IV seeks recovery of response costs incurred by the Claimant in removal of hazardous materials released by the Debtor on the property prior to selling the property to the Claimant.

On October 18, 1991, the parties filed in the present adversary proceeding a joint motion for a temporary stay of the proceeding in light of the Debtor's chapter 11 filing of October 2, 1991. An order issued staying the proceeding. The Debtor's answer to the amended complaint was not then due.

Not having initially scheduled the Claimant as a creditor, the Debtor on February 18, 1992 filed amended schedules showing the Claimant as a creditor holding a contingent, unliquidated and disputed claim in an unknown amount arising from the alleged breach of a lease. Prior to then, an order had issued fixing a bar date of March 1, 1992 for the filing of claims. The Claimant received no notice of this bar date, which had been set prior to inclusion of the Claimant as a scheduled creditor.

On April 9, 1992 the Claimant filed a proof of claim in the Debtor's case. The form of that document complied with the Bankruptcy Rules in all respects. Despite the previous

filing of the amended complaint, the proof of claim sought damages of only $306,300, the amount claimed in the original complaint. It stated the claim was for "breach of Contract (Lease)" and was "secured." The court thereafter set a bar date of September 21, 1992 for those parties like the Claimant who had not received notice of the previous bar date. The Claimant was given due notice of the extended bar date.[1]

On January 6, 1993, the Debtor filed an objection to the Claimant's $306,300 claim denying all liability. The objection referred to the present amended complaint, specifying its adversary proceeding docket number.

On April 20, 1993, nine days before confirmation of the Debtor's plan of reorganization, the Debtor and Claimant filed in the Debtor's case a joint pretrial stipulation concerning the Claimant's claim. The stipulation states the claim is "more fully set forth in [the] Amended Complaint" and gives the name and number of this adversary proceeding. The stipulation describes each count in the amended complaint but sets forth no dollar amount of the claim. In the stipulation, the Debtor denies liability and asserts various defenses including failure to mitigate damages and contributory negligence. The Debtor makes no assertion in the stipulation that the claim was not timely filed.

The parties thereafter agreed to try the claim objection in the context of this adversary proceeding. Shortly before trial, the Debtor was allowed to amend its answer to raise the issue of whether portions of the amended complaint are barred by reason of

1. The Claimant has furnished an affidavit of an employee stating the Claimant has conducted a thorough search of its records but has not found notice of the extended bar date. The Debtor's certificate of service creates a presumption that notice was served upon the Claimant. *E.g., Bratton v. Yoder Co. (In re Yoder Co.)*, 758 F.2d 1114 (6th Cir.1985); *Moody v. Bucknum (In re Bucknum)*, 105 B.R. 25 (9th Cir. BAP 1989), *aff'd*, 951 F.2d 204 (9th Cir.1991); *Osborn v. Ricketts (In re Ricketts)*, 80 B.R. 495 (9th Cir. BAP 1987); *In re Burnham, Connolly, Oesterle and Henry*, 174 B.R. 472 (Bankr.E.D.Mich.1994); *In re Walker*, 161 B.R. 911 (Bankr.D.N.J.1993); *In re Euston*, 120 B.R. 228, 230 (Bankr.M.D.Fla.1990). This presumption is not rebutted by the Claimant's affidavit. *Ricketts*, 80 B.R. at 497 (if presumption of receipt of notice resulting from certificate of mailing could be defeated by an affidavit to the contrary, scheme of deadlines and bar dates under the Code would become "unraveled"); *Walker*, 161 B.R. at 914 (to rebut presumption, creditor must prove that mailing was not accomplished by clear and convincing evidence, such as testimony from employee that notice was not sent, or proof that no creditor listed received notice). *But see Yoder Co.*, 758 F.2d at 1118 (testimony of nonreceipt rebutted presumption of receipt).

the September 21, 1992 bar date. With the consent of the parties, I conducted a trial on only that portion of the complaint containing claims concerning the building's roof. At the conclusion of the trial, I ruled the Debtor had breached its obligations under the lease concerning the roof and found damages in the sum of $209,500. I deferred receiving evidence on other allegations in the amended complaint pending disposition of the Debtor's present motion for summary judgment.

## II. *PROOF OF CLAIM ISSUES*

The Debtor contends the only claim filed by the Claimant subject to allowance is the $306,300 breach of contract claim asserted in the formal proof of claim which the Claimant filed in the Debtor's case prior to the claims bar date. The Debtor accordingly moves for summary judgment on Count II (misrepresentation concerning windows) and Count IV (response costs for environmental damage). The Debtor also moves for partial summary judgment on Count I to the extent the claims in Count I exceed $306,300.

A. *Are any pleadings in this adversary proceeding sufficient to constitute a timely and informal amendment to the $306,300 proof of claim?*

■ The Claimant relies, first of all, upon a pleading filed in this adversary proceeding. The Claimant contends its $306,300 proof of claim was informally amended prior to the bar date by the joint motion for a stay which the parties filed in this adversary proceeding on October 18, 1991, long before the bar date in the Debtor's case. In that motion the parties requested the court to "temporarily stay" the proceeding in view of the Debtor's recent chapter 11 filing.

■ There are insuperable difficulties to treating the joint motion for a stay as a timely, informal amendment. First of all, the document lacks the necessary demand for payment required of an "informal" proof of claim. That requirement is more fully discussed later. But there is an even more basic problem. The joint motion was not filed in the Debtor's case. The present adversary proceeding is part of the Claimant's case, not the Debtor's. A creditor or other party in interest examining the records of the Debtor's case would therefor not be apprised of the joint motion. A proof of claim, formal or informal, filed in one case has no effect as a claim in another case.[2] To be effective, a claim against a debtor must appear in the record of the debtor's case.[3]

■ The Debtor was of course always aware of the claims contained in the amended complaint, which had been served upon it. But it is not sufficient for bar date purposes for a claim to be delivered to the estate representative. The claim must be filed "with the clerk...."[4]

The Claimant is not aided by Bankruptcy Rule 5005(c). The rule states "[a] paper intended to be filed with the clerk but erroneously delivered to the United States trustee [or] the trustee ... shall ... be transmitted forthwith to the clerk of the bankruptcy court."[5] Although the motion may be considered to have been delivered to the Debtor, who was one of its signatories, this is not delivery to the "trustee" within the meaning of the rule. True, a debtor in possession has many of the rights and powers, and performs many of the functions, given by the Code to a "trustee."[6] But the Bankruptcy Rules repeatedly distinguish between a debtor in possession and a trustee, so that reference in the rules to the "trustee" is not reference to the

2. *Liakas v. Creditor's Comm. of Deja Vu, Inc.,* 780 F.2d 176 (1st Cir.1986) (formal proof of claim filed in one case ineffective as claim in unconsolidated case of affiliated debtor).

3. *Id.; In re Greene,* 33 B.R. 1007 (D.R.I.1983); *Levine v. First Nat'l Bank of Lincolnwood (In re Evanston Motor Co., Inc.),* 26 B.R. 998 (N.D.Ill. 1983); *aff'd,* 735 F.2d 1029 (7th Cir.1984); *In re Vega Baja Lumber Yard, Inc.,* 285 F.Supp. 143 (D.P.R.1968); *In re Drexel Burnham Lambert*

*Group, Inc.,* 129 B.R. 22 (Bankr.S.D.N.Y.1991). *But see, e.g., County of Napa v. Franciscan Vineyards, Inc. (In re Franciscan Vineyards, Inc.),* 597 F.2d 181 (9th Cir.1979).

4. Fed.R.Bankr.P. 5005(a).

5. Fed.R.Bankr.P. 5005(c).

6. 11 U.S.C. § 1107 (1988).

debtor in possession.[7] Moreover, there was no mistaken delivery within the meaning of Rule 5005(c). The joint motion was filed precisely in the manner the parties intended.

Observing that a debtor in possession has the same essential powers and functions of a trustee, the Claimant relies upon the Supreme Court's decision in *J.B. Orcutt Co. v. Green*[8] and decisions following it.[9] These decisions stand for the proposition that delivery of a claim to a trustee in bankruptcy is equivalent to filing the claim in court for the purpose of complying with the claims bar date. *Orcutt*, however, was based upon a general order then in effect which required a trustee to deliver to the referee any claim he received.[10] In light of this rule, the Court considered a proof of claim delivered to the trustee as equivalent to a filing.[11] The sole remnant of that general order is Rule 5005(c), previously discussed. Thus *Orcutt* is no longer controlling.[12]

**B.** ***Is the joint stipulation filed in the Debtor's case sufficient in wording to constitute a (late) proof of claim amending the $306,300 proof of claim?***

■ Placing another string on its bow, the Claimant next argues the joint stipulation filed on April 20, 1993 in the Debtor's case amended its proof of claim so that the claim now consists of the amended complaint. As shall be seen, this contention raises a number of questions. I turn first to whether the wording of the joint stipulation is sufficient to constitute a formal (albeit untimely) claim amending the timely and formal $306,300 proof of claim.

Bankruptcy Rule 3001(a) tells us that a proof of claim "shall conform substantially to the appropriate official Form."[13] Official Form 10 requires information as to the following matters: name and case number of the debtor, name, address and telephone number of the creditor, the basis of the claim (goods sold, money loaned, etc.), the date the claim was incurred, its dollar amount, and its classification (secured, priority or nonpriority). The form requires a claimant to sign it, attach documents supporting the claim, and deduct all payments on the claim (as well as claims against the debtor) in arriving at the amount of the claim. The form also seeks information on matters such as the claimant's knowledge of whether another party has filed a proof for the same claim.

I conclude that the joint stipulation substantially conforms to Form 10 and thus constitutes a formal (but late) proof of claim. The joint stipulation states the Claimant is a debtor in its own chapter 11 proceeding pending in the same court, giving the chapter 11 case number. It also states: "[The Claimant's] claim is more fully set forth in its Amended Complaint in the [Claimant's] bankruptcy Adversary Proceeding, entitled Northeast Office and Commercial Properties, Inc. v. Smith Valve Corporation, No. 91–4136." By that reference, any creditor or other party in interest can easily locate the file on the present adversary proceeding and read the amended complaint. To require words expressly incorporating the amended complaint by reference would be a senseless formality. The reference made to it is sufficient. The amended complaint spells out the

---

7. *See, e.g.*, Fed.R.Bankr.P. 2009, 2010, 2011, 2012, 3004, 3010, 3011, 3017, 3020, 5002, 6004, 6006, 6009.

8. 204 U.S. 96, 27 S.Ct. 195, 51 L.Ed. 390 (1907).

9. *E.g., First American Bank & Trust Co. of Minot v. Butler Mach. Co. (In re Haugen Constr. Servs., Inc.)*, 876 F.2d 681 (8th Cir.1989); *County of Napa v. Franciscan Vineyards, Inc. (In re Franciscan Vineyards, Inc.)*, 597 F.2d 181 (9th Cir.1979), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980).

10. 204 U.S. at 102–03, 27 S.Ct. at 197–98.

11. *Id.* at 102, 27 S.Ct. at 197.

12. *E.g., In re Greene*, 33 B.R. 1007 (D.R.I.1983); *Levine v. First Nat'l Bank of Lincolnwood (In re Evanston Motor Co., Inc.)*, 26 B.R. 998 (N.D.Ill. 1983), *aff'd*, 735 F.2d 1029 (7th Cir.1984); *see also, e.g., In re Drexel Burnham Lambert Group, Inc.*, 129 B.R. 22 (Bankr.S.D.N.Y.1991) (to qualify as informal proof of claim letter must be filed with court). *Contra In re Neisner Bros., Inc.*, 2 B.R. 472 (Bankr.S.D.N.Y.1979) (letter evidencing claim delivered to accountant of debtor in possession in response to audit inquiry equivalent to delivery to trustee).

13. Fed R.Bankr.P. 3001(a).

nature of the claim much more fully than could a completed Form 10. The only information of any substance required by Form 10 and lacking in the amended complaint relates to the classification of the claim as secured, priority or unsecured. This void is made up, at least in part, by information contained in the original proof of claim for $306,300 stating the claim is fully secured.

■ The joint stipulation, in any event, constitutes an informal amendment to the proof of claim. Courts have had numerous occasions to determine whether a writing placed on the record prior to the bar date is sufficient as an informal proof of claim to be amendable into a formal proof of claim after the bar date. If the joint stipulation was not in substantial compliance with Form 10, the question would be whether it is sufficient to constitute an informal amendment to the formal $306,300 proof of claim, rather than an informal proof of claim itself. But the question of document sufficiency would be the same as in the informal proof of claim cases. Courts have phrased the requirement for an informal claim in various ways. To some, if the document "manifests, on the judicial record, a clear intention to pursue the matter, then in such event technical flaws are subject to later correction."[14] Others require the writing to contain "a demand by the debtor on the creditor" and "an intent to hold the debtor liable for the debt."[15] However the standard is phrased, the joint stipulation

qualifies as an informal (but late) proof of claim.

### C. Is the joint stipulation an impermissible amendment because it asserts "new" claims after the bar date?

The Bankruptcy Rules contain no provision governing amendment of a proof of claim. Although this adversary proceeding is governed by Bankruptcy Rule 7015 concerning amendments to pleadings, the proceeding is in substance an objection to amendment of a proof of claim. A claim objection normally initiates a so-called "contested matter."[16] Nevertheless, if an objection to a claim is joined with a demand for relief of a kind specified in Bankruptcy Rule 7001, the matter becomes an adversary proceeding.[17] As shall be discussed later, the Debtor has filed a counterclaim requesting judgment declaring the Claimant's attachment to be void. Bankruptcy Rule 7015 therefor governs this proceeding.

Bankruptcy Rule 7015 restates Rule 15 of the Federal Rules of Civil Procedure. It states in part:

(c) **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth

---

14. *Greene*, 33 B.R. at 1009 (holding acknowledgment of debt on bankruptcy schedules to be insufficient).

15. *In re McCoy Management Servs., Inc.*, 44 B.R. 215, 217 (Bankr.W.D.Ky.1984) (motion to set aside agreed order and attached documents deemed sufficient); *see also Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.*, 954 F.2d 1, 9 (1st Cir.1992) (formal proof of claim and attached mortgage referring to lease sufficient to assert informal proof of claim for indemnification pursuant to lease provision); *Liona Corp., Inc. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 605 (2d Cir.1991) (creditor's pleading in opposition to adversary proceeding initiated by debtor sufficient informal claim); *Sun Basin Lumber Co. v. United States*, 432 F.2d 48 (9th Cir.1970) (creditor's filed objection to trustee's petition to sell creditor's collateral and creditor's petition to reclaim collateral sufficient to consti-

tute informal proof of claim); *In re L.F. Rothschild Holdings, Inc.*, 143 B.R. 335 (S.D.N.Y. 1992) (listing of prepetition law suit in bankruptcy schedules insufficient); *In re Hansel*, 160 B.R. 66 (Bankr.S.D.Tex.1993) (motion for relief from stay insufficient); *In re Mother Hubbard, Inc.*, 152 B.R. 189 (Bankr.W.D.Mich.1993) (unfiled promissory notes, ledgers and balance sheets insufficient); *In re Hugh Menefee, Inc.*, 121 B.R. 51 (Bankr.D.Haw.1990) (bankruptcy schedules insufficient); *In re Bowers*, 104 B.R. 362 (Bankr. D.Colo.1989) (minutes of hearing during which parties reached stipulation deemed informal proof); *In re Scholz*, 57 B.R. 259 (Bankr. N.D.Ohio 1986) (letters from I.R.S. containing no demand insufficient).

16. FED.R.BANKR.P. 9014.

17. FED.R.BANKR.P. 3007.

or attempted to be set forth in the original pleading, ...[18]

There is here no applicable "statute of limitations" as such. Congress intended rules to be issued setting time limits for the filing of proofs of claim.[19] Bankruptcy Rule 3003(c)(3) accordingly provides that in a chapter 11 case the court shall fix the time within which proofs of claim must be filed.[20] Pursuant to that rule, I set September 21, 1992 as the bar date for the filing of claims by the Claimant and others who had not received court notice of the prior bar date. Nothing in Rule 3003 or that order permits a purported claim amendment to relate back to the date of the original proof of claim.

The question is therefor whether the claims contained in the amended complaint "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading", namely the $306,300 proof of claim. The proof of claim states it is for "Breach of contract (Lease)." The computation of its $306,300 damage claim is disclosed by the original complaint. The original complaint sought damages of $223,500 for costs already incurred in repair of the roof and $82,800 as the estimated cost to repair the windows, making a total of $306,300. Count I of the amended complaint seeks $623,500 in damages for breach of the Debtor's obligations under the lease. But it discloses this is merely the result of a new estimate of $400,000 as the future cost to repair or replace the windows. Count I alleges the same breach of contract. Its claim therefor arises out of the same "conduct, transaction or occurrence" set forth in the $306,300 proof of claim. Amendments merely increasing the damage claim relate back.[21]

Count II of the amended complaint alleges the Debtor misrepresented that the window defects are capable of repair when the Debtor knew they were not. Although this count sounds in tort rather than con-tract, it also relates back because the alleged misrepresentation took place in the context of the lease transaction which formed the basis for the original proof of claim. It also seeks damages for the same window defects complained of in the $306,300 proof of claim.

The Debtor makes no request for summary judgment on Count III of the amended complaint. Count III alleges the actions complained of in the two prior counts constitute false, misleading and deceptive acts or practices within the meaning of Massachusetts General Laws, sections 2 and 11, and seeks treble damages. Because this count involves the same conduct and transaction complained of in the prior counts, it too is permissible under Bankruptcy Rule 7015(c)(2).

Count IV is another matter. It alleges the Debtor released hazardous waste onto the property during the period of the Debtor's ownership, and that the Claimant has incurred expenses to remediate the contamination. It requests reimbursement pursuant to Massachusetts General laws, chapter 21E, section 4. That statute grants a remedy to a party liable to the Commonwealth of Massachusetts for any response costs the Commonwealth might incur. If such a party undertakes action in response to the release of hazardous materials, under section 4 it has a claim to recover its costs from any party who would be similarly liable to the Commonwealth.[22]

Unlike the $306,300 proof of claim, Count IV is not based upon the lease. It is not even based upon the purchase transaction. It arises, rather, from the potential joint liability of the Debtor and Claimant to the Commonwealth as the result of their present or past ownership of the property. Count IV has nothing to do with what was said or done as part of the lease or purchase transaction. It therefor does not arise out of the "conduct,

---

**18.** Fed.R.Bankr P. 7015(c).

**19.** H.R.Rep. No 595, 95th Cong., 1st Sess. 351 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 61 (1978).

**20.** Fed.R.Bankr.P. 3003(c)(3).

**21.** 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1497 (1990).

**22.** Mass.Gen.Laws Ann. ch. 21E § 54 (Law. Co-op.1988).

transaction, or occurrence set forth or attempted to be set forth" in the $306,300 proof of claim. True, the original proof of claim and Count IV both concern the same real estate. But that is not sufficient. A common subject matter does not make two claims arise out of the same "conduct, transaction or occurrence."[23] An amendment to include Count IV is therefor improper.

As noted, the Bankruptcy Rules contain no provision governing amendment of proofs of claim. As a result, courts dealing with requests for a late amendment usually resolve the matter under a more general test—whether the amendment contains any "new" claim.[24] The result, however, is much the same as that mandated by Bankruptcy Rule 7015(c). In *Continental Motors Corp. v. Morris,*[25] for example, the original, timely-filed proof of claim was for breach of contract and contained a request for damages in a specified amount. The claimant moved after the bar date to increase its damage claim for the same breach. The court allowed the amendment. The Court of Appeals for the First Circuit has recently indicated its approval of this approach. "[A]s a general rule," the court has stated, "amendments intended merely to *increase* the amount of a claim grounded in the same *right to payment* are not considered "new" claims under the

Code."[26] Numerous decisions involving proofs of claims for taxes illustrate this point. Courts permit late amendments increasing the amount of a tax claim so long as the increased claim is for the same type of tax, even though the amendment relates to different tax periods.[27] Bankruptcy Rule 7015(c) is merely a more specific statement of these same principles. I would therefor come to the same result on the limitations problem if I were guided only by the case law dealing with claim amendments without the assistance of the rule.

**D.** *Is it unfair to creditors for the court at this late date to approve the amended complaint as an amendment to the $306,300 proof of claim?*

█ There is yet another hurdle for the Claimant to overcome. Under Bankruptcy Rule 7015, even an amendment which escapes statute of limitations strictures is to be permitted only "when justice so requires."[28] Courts dealing with amendments to proofs of claim operating in the absence of a rule impose the same requirement, although they phrase it somewhat differently. They permit a late amendment only if doing so would not unfairly prejudice parties in interest or, as they sometimes phrase it, if permitting the

23. *E.g., Forzely v. Avco Corp. Elec. Div.,* 826 F.2d 974 (11th Cir.1987) (complaint seeking overtime compensation denied amendment through addition of claim for improper employment termination); *Pennsylvania Eng'g Corp. v. Islip Resource Recovery Agency,* 714 F.Supp. 634 (E.D.N.Y.1989) (claim to vacate arbitrator's award distinct from claim for relitigation of award).

24. *E.g., Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.),* 954 F.2d 1, 9–12 (1st Cir. 1992) (counterclaim for indemnity pursuant to lease provision relates to same lease-sale-mortgage transaction forming basis for prior claim); *In re Commonwealth Corp.,* 617 F.2d 415, 420 (5th Cir.1980) (bank's claim under "take-out" agreement between debtor and borrower not distinct from claim based upon dishonored check); *Continental Motor Corp. v. Morris,* 169 F.2d 315 (10th Cir.1948) (increased damages sought for same breach of contract not a new claim); *Associated Container Transp. (Australia) Ltd. v. Black & Geddes, Inc. (In re Black & Geddes, Inc.),* 58 B.R. 547, 553 (S.D.N.Y.1983) (claim for constructive trust not independent from claim relating to same transaction); *In re W.T. Grant Co.,*

37 B.R. 593 (Bankr.S.D.N.Y.1984) (claim arising from rejection of lease different than prior claim for accrued rent); *In re White Motor Corp.,* 59 B.R. 286, 288 (Bankr.N.D.Ohio 1986) (increased claim for premium under same liability insurance policy not a distinct claim).

25. 169 F.2d 315.

26. *Hemingway Transp.,* 954 F.2d at 10.

27. *E.g., United States v. Kolstad (In re Kolstad),* 928 F.2d 171 (5th Cir.1991), *cert. denied* 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991); *Menick v. Hoffman,* 205 F.2d 365 (9th Cir.1953); *Industrial Comm'r of New York v. Schneider,* 162 F.2d 847 (2d Cir.1947); *In re Hanscom Retail Foods, Inc.,* 96 B.R. 33, 35–36 (Bankr.E.D.Pa. 1988); *cf. United States v. International Horizons, Inc. (In re International Horizons, Inc.),* 751 F.2d 1213, 1216 (11th Cir.1985) (IRS denied right to file late amendment to timely-filed employment tax claim so as to include income tax claim).

28. Fed.R.Bankr.P. 7015(a).

amendment would be equitable to such parties.[29]

■■■■ The Debtor appears to concede, as it must, that the Debtor would suffer no unfair prejudice from the amendment because of its prior knowledge of the amended complaint. That is obviously so. The Debtor had been served with the amended complaint even before its chapter 11 filing. The Debtor argues, however, that to allow the amendment at this late date would be prejudicial to unsecured creditors. The Debtor implies that unsecured creditors relied upon the amount of unsecured claims set forth in the disclosure statement.[30]

There are several reasons unsecured creditors would not be prejudiced by allowance of the amended complaint (except for Count IV) as an amendment. First, the unsecured debt figure given in the body of the Debtor's disclosure statement is for the aggregate unsecured debt of the Debtor and its affiliate, Moreland Valve Company, Inc., whose case was jointly administered with the Debtor's case but not consolidated with it. From this information creditors had no way of knowing how much of the debt was the Debtor's and how much was Moreland Valve's.

Second, creditors had notice of the amended complaint as early as January 6, 1992. On that date, the Debtor filed an objection to the $306,300 proof of claim in which it made reference to this adversary proceeding and the creditor's chapter 11 case, furnishing the docket numbers of both. Although that objection does not qualify as a formal or informal amendment because it contains no demand by the Claimant, it is certainly sufficient to give notice of the significance of the amended complaint, particularly as it is directed at the original proof of claim. Creditors had that notice well in advance of confirmation, which did not take place until April 29, 1992.

Finally, the disclosure statement contains many caveats against reliance upon the figure it furnishes for the consolidated unsecured debt. It warns creditors that additional (unspecified) sums may be owed for interest if the court finds the Debtor to be solvent. The creditors are also told "Smith has been named a defendant in a number of law suits."[31] One of those lawsuits is of course the present proceeding. Creditors are assured, furthermore, that "[a]ll of the claims arising·out of those lawsuits will be dealt with, liquidated and paid in accordance with the Debtors' plan."[32] Among the law suits mentioned is a $7 million claim. The incremental increase in claims represented by the amended complaint (exclusive of Count IV) pales in comparison to a claim of that size.

The Debtor cites *Holstein v. Brill*[33] for the proposition that an amendment is impermissible after confirmation. In that case, however, the creditor made no attempt to assert its amended claim until four years after confirmation of the debtor's chapter 13 plan. That is not the situation here. Moreover, the court in *Holstein* believed allowance of the amended claim would require an amendment to the plan. No plan amendment is required here. Thus it is immaterial that the initial payment already made under

29. *E.g., Hemingway Transp.*, 954 F.2d at 10 (no prejudice due to knowledge of estate representative); *Futuronics Corp. v. Sycamore Indus., Inc. (In re Futuronics Corp.),* 23 B.R. 281 (S.D.N.Y. 1982) (affirming bankruptcy judge's finding of prejudice because amendment was sought on eve of confirmation hearing); *In re Dietz,* 136 B.R. 459, 468, 470 (Bankr.E.D.Mich.1992) (creditors prejudiced only to extent amendment would permit claimant to share in prior distributions); *In re Lanman,* 24 B.R. 741, 743 (Bankr.N.D.Ill. 1982) (amendment to include priority claim unfair to objecting creditor who relied on filed claims when consenting to unrelated sale and settlement); *In re Alsted Automotive Warehouse, Inc.,* 16 B.R. 924, 926 (Bankr.E.D.N.Y.1982) (prejudice found where trustee had compromised other claims based upon assumed distribution to

creditors projected in absence of amended claim).

30. Although the Debtor makes no assertion that the $306,300 disputed claim was included in the amount given for unsecured claims in the Debtor's disclosure statement, I assume for purposes of this opinion that it was.

31. Disclosure Statement of Smith Valve Corporation and Moreland Valve Company, Inc. for Fourth Amended Joint Plan of Reorganization, page 22, filed on December 7, 1992.

32. *Id.*

33. 987 F.2d 1268, 1271 (7th Cir.1993).

the Debtor's plan has brought about "substantial consummation" of the plan, so that it cannot now be amended.[34]

■ In summary, the information furnished to the Debtor's unsecured creditors gave them no reason to rely upon any specific figure as the aggregate amount of unsecured claims against the Debtor. And the Debtor's objection to the $306,300 claim, on file months before the confirmation, fully alerted them to the existence of the amended complaint. Bankruptcy judges are given a large measure of discretion concerning this question of prejudice.[35] I am confident the allowance of the amendment will work no unfair prejudice to creditors.

I should add, to complete the discussion of equities,[36] there is no indication the Claimant refrained from filing a timely proof of claim for any improper purpose. The variation between the amended complaint and the $306,300 proof of claim seems to have been the result of the Claimant mistakenly basing the proof of claim on the original complaint rather than the amended complaint. The Claimant certainly made no effort to hide the additional claims set forth in the amended complaint.

### E. Should the amended complaint be treated as a retroactive amendment so as to entitle the Claimant to share in the plan distributions already made?

■ The Debtor's plan of reorganization, confirmed on April 29, 1993, proposes a 100% payment on unsecured claims, plus interest. It proposes payment of 20% on the plan's effective date and five annual installments of 16%. Two payments have already been made.

---

34. *See* 11 U.S.C. §§ 1101, 1127 (1988).

35. *E.g., United States v. Kolstad (In re Kolstad),* 928 F.2d 171, 175 (5th Cir.1991), *cert. denied,* 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991).

36. *See Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.),* 954 F.2d 1, 12 (1st Cir.1992).

37. In *In re Dietz,* 136 B.R. 459 (Bankr.E.D.Mich. 1992), the court allowed a late claim amendment

The Claimant's claim as allowed may or may not be in excess of the $306,300 amount of its original claim. If the allowed claim does exceed that figure, I conclude the Claimant is entitled to have the excess share in prior as well as future distributions. This works no unfair prejudice upon the Debtor because of its knowledge of the amended complaint from the beginning. And, as discussed, there is no unfair prejudice to unsecured creditors concerning notice of the amended complaint. Nor will actual payment of any excess over $306,300 be prejudicial to unsecured creditors. They will be paid their 100% dividend whether or not the Claimant is paid.[37] Moreover, there is no suggestion payment of the excess will cause the plan to go into default.

### F. Is the amended complaint defective as an amended proof of claim because the Claimant has not filed a motion for court approval of the amendment?

■ The Claimant sought and obtained court approval to amend its original complaint in this adversary proceeding. It has never requested court approval to amend its $306,300 proof of claim. The Debtor contends that because of this lapse the amended complaint cannot now be treated as an amended proof of claim.

Bankruptcy Rule 7015 permits a pleading to be amended, with immaterial exceptions, "only by leave of court."[38] Most of the decisions dealing with timely, informal proofs of claim have been rendered in the context of a motion for permission to file a formal proof of claim based upon the previous informal proof.[39] But the circumstances in the present case are quite different. Already on record in the Debtor's case is a formal proof of claim and reference to a subsequent writ-

---

but did not permit the creditor to share in prior distributions under the debtor's chapter 13 plan. In that case, however, allowance of the amendment affected what other creditors would receive under the plan.

38. Fed R.Bankr.P. 7015(a).

39. *See* cases cited at note 14–15.

ing, the amended complaint, which qualifies as an amended, formal proof of claim. The Debtor has at all times been aware of the claims contained in the amended complaint. And the Claimant obtained court approval of the amended complaint as an amendment to its complaint in this adversary proceeding. These circumstances provide ample reason to dispense with the formality of a motion to amend.

Without a motion to amend having been filed, the Court of Appeals for the First Circuit has approved as a proof of claim a document which qualified only as an informal proof of claim. In *Woburn Associates v. Kahn (In re Hemingway Transport, Inc.)*,[40] the claimant had filed a formal proof of claim against a subsidiary of the debtor. The claim was for the balance due on a secured promissory note delivered in part payment on the claimant's sale of real estate to the subsidiary. The claimant attached a copy of the purchase money note and mortgage to its proof of claim. The mortgage contained a reference to a lease between the claimant and the debtor, the parent of the subsidiary. The claimant later brought a claim for indemnification against the debtor based upon an indemnification provision in the lease. The bankruptcy cases of the parent and subsidiary having been consolidated, the court viewed the mortgage's reference to the lease as a timely, informal claim for indemnification from the debtor under the terms of the lease. The court made no mention of the absence of a motion for leave to amend.[41]

### III. *THE ATTACHMENT LIEN*

■ Finally, the Debtor moves for summary judgment on Count II of its counterclaim. That count seeks to avoid the Claim-

ant's prepetition attachment lien of $185,000 on the Debtor's real estate in Whitinsville, Massachusetts, its principal place of business. The Debtor contends the court's order confirming its plan operated to extinguish the lien.

The Debtor's plan provides for two classes of secured creditors. Northeast Office is not included in either class. The plan contains no provision preserving the Claimant's attachment. Instead, the joint plan of the Debtor and its affiliate provides as follows:

9.1 Upon the Effective Date, all property of the Debtors' estates shall revest in the Debtors, subject only to the liens of the holders of the Class One and Class Two Claims, and otherwise shall be free and clear of all claims and interests of any nature whatsoever.

Section 1141 of the Bankruptcy Code states in relevant part:

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.[42]

The Claimant's attachment lien was not expressly preserved in either the plan or the order confirming the plan. Therefor, pursuant to section 1141, confirmation of the plan operated to extinguish the Claimant's lien.[43]

---

40. 954 F.2d 1, 9–12 (1st Cir.1992).

41. *Collier* believes it to be illogical to require an amendment of an informal proof of claim into a formal proof. *See* LAWRENCE P. KING, 8 COLLIER ON BANKRUPTCY ¶ 3001.03 (15th ed. 1991). There is disagreement with this view. *See In re Dietz*, 136 B.R. 459, 464–65 (Bankr.E.D.Mich.1992).

42. 11 U.S.C. § 1141 (1988).

43. *See Minstar, Inc. v. Plastech Research, Inc. (In re Arctic Enters., Inc.)*, 68 B.R. 71 (D.Minn.1986) ("claims and interests" includes creditor's lien); *In re Henderberg*, 108 B.R. 407 (Bankr.N.D.N.Y.

1989); *In re Fischer*, 91 B.R. 55 (Bankr.D.Minn. 1988); *General Elec. Credit Corp. v. Nardulli & Sons Co., Inc. (In re Nardulli & Sons Co., Inc.)*, 66 B.R. 871 (Bankr.W.D.Pa.1986), *rev'd on other grounds*, 836 F.2d 184 (3d Cir.1988) (circuit court found plan expressly acknowledged continued existence of creditors' security interest); *Pennsylvania Iron & Coal Co., Inc. v. Good (In re Pennsylvania Iron & Coal Co., Inc.)*, 56 B.R. 492, 495 (Bankr.S.D.Ohio 1985); *Board of County Comm'rs of Saline County, Kansas v. Coleman Am. Properties, Inc. (In re American Properties, Inc.)*, 30 B.R. 239, 246 (Bankr.D.Kan.1983) (after confirmation of chapter 11 plan, creditor's only

Observing that section 1141 extinguishes only liens "dealt with" by the plan, the Claimant argues section 1141 has no application because the Whitinsville real estate, not being expressly mentioned in the plan, was not "dealt with" by the plan. The plan, however, states "all property" of the bankruptcy estate shall revest in the reorganized debtor subject only to specified liens. That is sufficient to include any property, and certainly the Debtor's main office and plant.

The Claimant contends it is "generally accepted" that a lien will pass through a bankruptcy proceeding unaffected unless a party requests the court to determine and disallow the claim secured by the lien, and the claim is subsequently disallowed. It cites sections 502 and 506(d), which provide for the allowance of claims or interests and the determination of secured status.

This argument was addressed in *Minstar, Inc. v. Plastech Research, Inc. (In re Arctic Enterprises, Inc.)* [44] The creditor there argued that the two sections, read together, establish its prepetition lien was not extinguished by section 1141 because pursuant to their provisions the claim was an allowed secured claim.

The court in *Arctic* found this reasoning unpersuasive. It noted that the decisions cited by the creditor were rendered in chapter 7 cases. In a chapter 7 case, there is no plan of reorganization, so that absent a section 506 lien avoidance proceeding, there is no method of avoiding lien rights.[45] However, in a chapter 11 case, parties look to the plan as the final adjudication of their rights. If section 1141 could not operate to extinguish liens, the *Arctic* court believed cases would be "greatly complicated" because debtors would have to challenge the claims of all disputed lienholders prior to submitting a plan.[46] I agree.

## IV. CONCLUSION

A separate judgment has issued declaring that Counts I, II and III of the amended complaint contain amended claims against the Debtor which are not barred by the September 21, 1992 bar date. The judgment also dismisses Count IV of the amended complaint on the merits and declares the Claimant's attachment lien void. The judgment, finally, sets down a pretrial for April 12, 1995 at 11:00 A.M. on claims involving windows under Counts I and II, and on the chapter 93A claim contained in Count III.

### AMENDED JUDGMENT

The Defendant having moved for summary judgment with respect to certain counts of the complaint and the Defendant's counterclaim, and the court having today issued an opinion containing conclusions of law on the motion, it is hereby

ADJUDGED and DECREED, that

1. The Defendant's motion is granted with respect to Count IV of the amended complaint and Count II of the Defendant's counterclaim, and is denied as to all other relief, as more specifically set forth below.

2. The claims contained in Counts I, II and III of the amended complaint are not barred by the September 21, 1992 bar date for the filing of claims fixed by this court by order of August 11, 1992 entered in the Defendant's chapter 11 case pending in this court, Docket No. 91–42508–JFQ.

3. Count IV of the amended complaint is dismissed with prejudice.

4. The following lien is hereby declared null and void: The $185,000 attachment lien obtained by the Plaintiff on property of the Defendant in Worcester County, Massachusetts by writ of attachment dated January 31, 1990 and

---

lien rights are those granted in confirmed plan). *But see In re Snedaker,* 39 B.R. 41, 42 (Bankr. S.D.Fla.1984) (confirmation of chapter 11 plan had no effect on creditor's prepetition secured claim); *but cf. In re Glow,* 111 B.R. 209 (Bankr. N.D.Ind.1990) (lien survived bankruptcy proceeding unimpaired where debtor neither avoided lien nor provided for its voidance in chapter 13 plan or by independent adversary proceeding).

**44.** 68 B.R. 71.

**45.** *Id.* at 80.

**46.** *Id.*

approved on February 9, 1990 by Hon. William C. O'Neil of the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts.

5. A pretrial is set down for April 12, 1995 at 11:00 A.M. with respect to trial of the remaining issues in this adversary proceeding.